OPINION OF THE COURT
Joan B. Lefkowitz, J.
This is an application for judgment pursuant to article 78 of *606 the Civil Practice Law and Rules with motions by Mamaroneck Beach & Yacht Club, Inc., Mamaroneck Beach & Yacht Club LLC, and Taylor Point Associates, Inc. (collectively hereafter MBYC) for an order, transferring the instant proceeding to the Environmental Claims Part, permitting MBYC to intervene, and dismissing the instant proceeding pursuant to CPLR 1003 for failure to join necessary parties.
Upon consideration of the documents read on the application and the motions, and for the following reasons, the motions to transfer, to intervene and to dismiss for failure to join necessary parties are denied, and the application for judgment pursuant to article 78 is granted.
Factual and Procedural Background
Unless otherwise indicated, the following facts are either undisputed or established by the record.
Petitioner is a resident of the Village of Mamaroneck. MBYC operates a private club located on the shore of Long Island Sound in the Village of Mamaroneck and filed with the Planning Board for the Village of Mamaroneck an application for approval of its plan to redevelop its property. Various aspects of that application and related applications before other officials, boards and agencies of the Village have been the subject of several actions and special proceedings before this court. One such litigation was a plenary action in which, inter alia, MBYC sought from the Village damages caused by delays in the processing and determination of such applications. (See Mamaroneck Beach & Yacht Club, Inc. v Board of Trustees of the Vil. of Mamaroneck, Sup Ct, Westchester County, index No. 8818/05 [hereafter the damages action].)
Pursuant to its authority under CPLR 3103 (a) to regulate discovery in civil actions, on June 16, 2006, this court (Lippman, J.) issued a protective order in the damages action, inter alia, directing that
“1. All documents, deposition testimony, interrogatory answers and other information produced or made available by a party or non-party (‘Producing Party’) in discovery in this action; whether pursuant to Court order or formal or informal request (‘Discovery Material’), shall be used by the party receiving the materials solely for the prosecution or defense of the claims in this litigation and shall not be used of [sic] any purpose other than this litiga *607 tion and the collection of any settlement funds or judgment award, if necessary, or related proceedings concerning the subject matter of this litigation.” (Confidentiality order, a copy of which is annexed to the order to show cause with stay[1] [hereafter OTSC] as exhibit B, at 1.)
The confidentiality order provided that the parties to the damages action could designate as “Confidential Material,”
“any non-public material (including testimony . . .) which is produced in the course of these proceedings herein when such material constitutes or contains: (a) MBYC membership information; (b) audited and unaudited financial statements; (c) accountant’s work papers, including those that form the basis for audited financial statements; (d) account statements; (e) documents evidencing loans; and (f) MBYC’s response to Interrogatory 20 (when so designated, ‘Confidential Material’).” (Id. 112 [a] at 2.)
The confidentiality order delineated the following procedure for designating confidential material:
“2. (b) Designation of documents or other materials or information as Confidential Material shall be made by stamping the documents or materials with the words ‘CONFIDENTIAL’ at the time of production of the documents or other materials to counsel for the party or parties receiving the Confidential Material (the ‘receiving party’). Portions of deposition and hearing transcripts that reference Confidential Material may be designated as Confidential Material by any party or witness in writing, served on the parties and (if the witness is a non-party) the witness within five (5) business days after receipt of the transcript from the party noticing the deposition ... In such a case, each party, and (if the witness is a non-party) the witness shall stamp the covers of original and each copy of the transcript in their possession with the word ‘CONFIDENTIAL. ’ Depositions and hearing transcripts shall automatically be treated as Confidential Material until the expiration of the five-business-day period described above.” (Id. at 2.)
The confidentiality order provided that confidential material so designated could be disclosed only to certain persons or enti *608 ties, none of whom are involved in the instant proceeding, and only under certain conditions, none of which are relevant to the instant proceeding, and otherwise prohibited the disclosure of designated confidential material to “a non-party.” (See id. 11 3 at 3-5.) Further, confidential material was to be returned to the producing party or destroyed by the receiving party “[w]ithin 60 calendar days of the final determination, including appeals, or other termination of’ the damages action (id. If 8 at 6).
During the discovery phase of the damages action, depositions were taken of Bernard J. Rosenshein, then president of MBYC, and Lisa Rosenshein, then vice-president of MBYC. Transcripts of those depositions (collectively hereafter the Rosenshein depositions) are currently in the possession of the Village.
By stipulated consent judgment (hereafter SCJ, a copy of which is annexed to the OTSC as exhibit A) so ordered by this court on September 8, 2010, the damages action and several other actions, proceedings, and claims between the parties were, “subject to terms and conditions of this Stipulated Consent Judgment, hereby settled and resolved” (SCJ 111 at 5); also, each party “irrevocably waive [d] any right it may have to appeal from the [SCJ]” (id. If 11 at 18). A stipulation of discontinuance with prejudice of the damages action (hereafter, SDWR a copy of which is annexed to the affirmation of Jonathan D. Lupkin, Esq. [hereafter Lupkin affirmation] as exhibit 3) was executed by MBYC’s attorneys on September 16, 2010, and counter-executed by the attorneys for the Village on September 20, 2010. Pursuant to the SCJ, the executed SDWP was to be held in escrow by the attorneys for the Village pending satisfaction of the terms of the SCJ at which point “the Pending Actions [including the damages action] shall be discontinued and the Parties shall file without further notice [the SDWP] with the Westchester County Clerk.” (SCJ If 19 at 19-20.) According to the records of the Westchester County Clerk, the SDWP was filed on January 13, 2011. Petitioner herein was neither a party to the damages action or any of the actions, proceedings and claims settled thereby, nor a signatory to the SCJ or SDWP
By e-mail to the Village of Mamaroneck Deputy Clerk dated November 17, 2010, petitioner submitted an application pursuant to article 6 of the Public Officers Law (also known as the Freedom of Information Law [hereafter FOIL]) for access to “any records relating to depositions and supporting subpoena material from [litigations settled pursuant to the SCJ]. I believe there should minimally be a deposition of Lisa Rosenshein as *609 well as one involving Bernie Rosenshein.” (A copy of that e-mail is part of exhibit 1 in the certified record.)[2] On December 1, 2010, having received no response to her request, petitioner sent an e-mail to the village manager — who is also “the FOIL appeal officer” (affidavit of Richard Slingerland in opposition to petition [hereafter Slingerland aff] at 1) — for the Village in which she said, “I am appealing, pursuant to FOIL, the apparent default denial of my request for the records requested by the email reproduced below.” (Record exhibit 1.) By e-mail sent to petitioner on December 1, 2010, the village manager responded: “I have received your request under FOIL, and will look into this matter immediately, to advise whether the records you have requested are releasable under FOIL.” (Record exhibit 1.)
On December 13, 2010, the village manager advised petitioner that he had denied her request in its entirety “based on the fact that ‘disclosure is not required where the material is attorney’s work product or material prepared for litigation before judicial, quasi-judicial or administrative tribunals, as described in CPLR sections 3101 (c) and (d).’ (See Certified Record Exhibit ‘2’).” (Slingerland aff at 3.) At petitioner’s request, the village manager agreed to “confer with the Committee on Open Government [hereafter the COG].”[3] (Id. at 3.)
By e-mail dated January 4, 2011, and sent at 1:15 p.m., the village manager advised petitioner, “I have spoken with the [COG] about your request, and I am discussing it further with Counsel to the Village on this matter, who are researching documents to provide me with information and court directives that may apply to this matter.” (Record exhibit 8.) By e-mail sent that same date at 3:46 p.m. the village manager advised petitioner:
“I have completed my review and discussion on this matter with the Village’s counsel, regarding your appeal for [sic] the Village’s denial [of petitioner’s FOIL request.]
“Just today I received a copy of a Court Ordered Confidentiality Order that was signed by Supreme *610 Court Justice Jonathan Lippman in June, 2006, a copy of which I am attaching to you.
“I am advised that under the parameters of this Confidentiality Order issued by the Supreme Court in Westchester County, the Village is prohibited from releasing the materials you have requested, including the depositions of Lisa Rosenshein and Bernard Rosenshein.
“Therefore, I regret to inform you that I am unable to comply with your request and must uphold the denial of the records you have requested under the parameters of the Freedom Of Information Law.
“With respect to your question as to who I spoke with at the State, I spoke with Camille Jobin-Davis, Assistant Director with the [COG].” (Record exhibit 10.)
By e-mail dated January 4, 2011, and sent at 5:06 p.m., petitioner forwarded the village manager’s determination and the confidentiality order on which it was allegedly based to Ms. Jobin-Davis of the COG. (See record exhibit 15.) By e-mail dated January 6, 2011, Ms. Jobin-Davis advised petitioner and the village manager that it was the opinion of the COG that
“if deposition transcripts or certain pages thereof were stamped CONFIDENTIAL within the time periods set forth in paragraph 2 (b) on page 2, they would be confidential and prohibited from being disclosed. If they were not stamped CONFIDENTIAL in accordance with the requirements of paragraph 2 (b), in our opinion, they are not.
“The [confidentiality order] is limited to materials produced or exchanged with respect to Case Index No. 8818/05.” (Record exhibit 15.)
On January 14, 2011, having received no further correspondence from the village manager in response to the advisory opinion of the COG, at 5:23 p.m. petitioner sent an e-mail to the village manager in which petitioner said:
“Because you seem to have amended the ‘official basis’ of your denial[ — as stated by the village man(a)ger in his e-mail of December 13, 2010 (see record exhibit 2) — ]I would like to clarify my request and obtain a clarification of your response. I am not seeking matters stamped ‘confidential’ pursuant to the order signed by Justice Lippman.
*611 “Please consider this FOIL as a request for deposition records and other supporting MBYC litigation material not stamped ‘confidential’ within the time periods set forth in paragraph 2 (b) of the confidentiality order signed by Justice Lippman. I would also like to reiterate my request that any such materials not involved in case no 8818/05 be released under FOIL unless another FOIL exemption applies.
“Obviously, I am trying to tailor my request to avoid any materials that the [COG] believes can legally be denied pursuant to the confidentiality order.” (Record exhibit 16.)
By e-mail dated January 14, 2011, and sent at 5:40 p.m., the village manager advised petitioner:
“As I believe I stated before, on the advice of legal counsel, the depositions are considered confidential under the terms of the court-ordered confidentiality agreement I provided to you last week.
“Please be advised that I have been informed by the Village’s attorneys that the depositions referenced by these cover sheets are considered confidential under the court-ordered confidentiality agreement, although they are not officially stamped confidential.” (Record exhibit 17.)
Petitioner commenced the instant special proceeding against the Village on March 23, 2011, by filing with the court a notice of petition (hereafter NOP) and petition in which she seeks “a Judgment pursuant to CPLR Article 78, for the release of those records under the Freedom of Information Law that Petitioner has been denied.” (NOP at 1.) The return date on the NOP was May 7, 2011, which was a Saturday. On April 29, 2011, the Village served petitioner with a verified answer, objections in point of law and affirmative defenses; the answer was filed with the court on May 2, 2011. Petitioner served the Village with a verified reply on May 4, 2011, and filed it with the court on May 5, 2011.
The Village has submitted for in camera inspection by the court an unredacted copy of the Rosenshein depositions, and identified those portions thereof the disclosure of which the Village contends is prohibited by the confidentiality order. Petitioner’s FOIL application included “supporting subpoena material” (see record exhibit 1), and she has submitted documentation indicating that the Village served a subpoena duces tecum upon Taylor Point Associates, Inc. (hereafter the *612 Taylor Point subpoena), in the damages action (see letter from petitioner, dated June 24, 2011, with exhibit). However, the Village has not submitted for in camera inspection any materials which may have been produced in response to the Taylor Point subpoena.
By the OTSC, which was signed by Acting Justice Warhit on June 15, 2011, MBYC moved for an order:
“1. Allowing [MBYC] to intervene as Respondents in this proceeding pursuant to CPLR 1012 (a);
“2. Transferring the within proceeding to the Environmental Claims Part pursuant to [the SCJ];
“3. Dismissing the within proceeding pursuant to CPLR § 1003 based upon the failure of Petitioner to name [MBYC] as necessary parties[, and];
“4. Determining that the [Rosenshein depositions] are not subject to disclosure. (OTSC at 1-2.)
According to a letter from its attorney dated July 1, 2011, “[t]he Village of Mamaroneck has no objection to [MBYC’s] application.” Petitioner opposed MBYC’s application in all respects by affidavit in opposition to joinder of new parties and case transfer filed July 11, 2011.
Discussion
Motions to Transfer Proceeding to Environmental Claims Part
The motions to transfer are dismissed as moot. The instant proceeding — including the petition and the OTSC — was transferred to the Environmental Claims Part for the Ninth Judicial District, over which this court presides, by order of Honorable Alan D. Scheinkman, Administrative Judge for the Ninth Judicial District, dated June 30, 2011.
Motions to Intervene
The motions to intervene as of right are denied. To the extent that it is relevant to the instant motions, CPLR 1012 (a) provides that “any person shall be permitted to intervene in any action: . . . [w]hen the representation of the person’s interest by the parties is or may be inadequate and the person is or may be bound by the judgment.” (CPLR 1012 [a] [2].)[4] Thus, to warrant intervention as of right under this subdivision, a *613 proposed intervener must satisfy two conditions. She must show, through “supporting affidavits and arguments,” that the interest she seeks to protect is or may not be adequately represented by any of the parties to the action in which she seeks to intervene. (Geary v Hunton & Williams, 245 AD2d 936, 939 [3d Dept 1997]; see also St. Joseph’s Hosp. Health Ctr. v Department of Health of State of N.Y., 224 AD2d 1008 [4th Dept 1996].) And the proposed intervenor must also show that judgment in the action would bind her to the extent that the judgment would have upon her a “res judicata effect.” (Vantage Petroleum, Bay Isle Oil Co. v Board of Assessment Review of Town of Babylon, 61 NY2d 695, 698 [1984].) MBYC has satisfied neither of these conditions.
MBYC contends that the interest it seeks to protect is the prevention of the disclosure of “confidential business information which belongs solely to the Club.” ([Reply] mem of law in support of motion [hereafter MBYC mem of law] at 4.) However, MBYC fails to allege that the Village’s representation of that interest in the instant proceeding is or may be inadequate, much less show by affidavits and arguments why or how such representation would be inadequate. Indeed, the only affidavit submitted by MBYC in support of the instant motions is that of MBYC’s attorney (see affidavit of Joel H. Sachs [hereafter Sachs aff]), and the only factual allegation concerning this issue in the Sachs affidavit is that disclosure of the Rosenshein depositions is prohibited by the confidentiality order.* *[5] But pursuant to the terms of the confidentiality order only those portions of deposition transcripts which were timely designated as “CONFIDENTIAL” by a party or witness were protected from later disclosure. (See confidentiality order 1Í 2 [b] at 2.) And in her e-mail of January 14, 2011 (see record exhibit 16), petitioner clearly stated that she was seeking only materials that had not been designated “CONFIDENTIAL” pursuant to the confidentiality order and that she was not seeking disclosure of any materials that had been so designated. Thus, MBYC’s interest in enforcing whatever prohibitions were actually imposed by the confidentiality order is not at risk in the instant proceeding.
*614 MBYC also argues that, aside from the confidentiality order, its interest in nondisclosure is protected under the exemptions delineated in Public Officers Law § 87 (2) (b) and (d) to the Village’s general duty to disclose under FOIL, and that the Village is prohibited from divulging such confidential information under section 805-a (1) (b) of the General Municipal Law.[6] (See MBYC mem of law at 6-7.) Thus, according to MBYC, the Village is mandated by law to protect the very interest for which MBYC seeks intervention. Yet, MBYC fails to show that the Village is unwilling or unable to fulfill its statutory mandate, or that the Village’s fulfillment thereof is or may be inadequate to represent MBYC’s interest. In fact, the content and tenor of the Village’s opposition to the petition — invoking, inter alia, both Public Officers Law § 87 (2) (a) and (b)[7] and the confidentiality order (see e.g. answer, third affirmative defense, at 11; affirmation in opposition to petition at 1-2) — demonstrate that its representation of MBYC’s stated interest is more than adequate. (See e.g. Geary v Hunton & Williams, 245 AD2d at 939.) Nor does MBYC allege or argue how a judgment determining whether the Village complied with its obligations under FOIL— including the aforementioned statutory mandates — would have a res judicata effect upon MBYC. Therefore, MBYC’s motions pursuant to CPLR 1012 (a) to intervene as of right are denied.
MBYC does not seek permission to intervene under CPLR 1013. Nor does MBYC invoke CPLR 7802 (d), which “is the specific provision governing intervention in CPLR article 78 proceedings.” (See Matter of Elinor Homes Co. v St. Lawrence, 113 AD2d 25, 28 [2d Dept 1985].) However, “whether intervention is sought as a matter of right under CPLR 1012 (a), or as a matter of discretion under CPLR 1013, is of little practical significance” (Wells Fargo Bank, N.A. v McLean, 70 AD3d 676, 677 [2d Dept 2010]) and, in any event, CPLR 7802 (d) “grants the *615 court broader authority to allow intervention in an article 78 proceeding than is provided pursuant to CPLR 1013 [or 1012] in an action” (Matter of Greater N.Y. Health Care Facilities Assn. v DeBuono, 91 NY2d 716, 720 [1998]). Consequently, the court has also considered the motions as if they had been properly made pursuant to CPLR 7802 (d).
“Intervention in proceedings pursuant to CPLR article 78 is permitted for ‘interested persons’ (CPLR 7802 [d]) and is a matter addressed to the sound discretion of the court.” (Matter of White v Incorporated Vil. of Plandome Manor, 190 AD2d 854, 854 [2d Dept 1993], lv denied 83 NY2d 752 [1994].) An interested person within the meaning of CPLR 7802 (d) is a person or entity “who will be directly affected by the outcome of th[e] proceeding.” (Id.) The showing required for intervention in an article 78 proceeding has also been described as “ ‘a real and substantial interest in the outcome of the proceedings’ (County of Westchester v Department of Health of State of N.Y., 229 AD2d 460, 461 [1996])” (Matter of Bernstein v Feiner, 43 AD3d 1161, 1162 [2d Dept 2007]), and “a legally cognizable claim” (Steglich v Board of Educ. of the City School Dist. of the City of N.Y., 32 Misc 3d 1203[A], 2011 NY Slip Op 51159[U], *5 [Sup Ct, NY County 2011]; Kruger v Bloomberg, 1 Misc 3d 192, 195 [Sup Ct, NY County 2003]). The precise nature of the interest or claim which qualifies a movant as an interested person who should be granted permission to intervene in an article 78 proceeding challenging the denial of a FOIL application is difficult to define. However, the opinion of the Appellate Division in Matter of New York Times Co. v City of N.Y. Fire Dept. (3 AD3d 340 [1st Dept 2004], affd 4 NY3d 477 [2005]) is illustrative.
In New York Times Co., the Court held that nine individual members of the families of people who died in the attack on the World Trade Center on September 11, 2001 were interested persons — within the meaning of CPLR 7802 (d) — and should have been permitted to intervene in a proceeding brought by a newspaper challenging the fire department’s denial of the petitioner’s application under FOIL for documents, audiotapes and other records compiled during the department’s internal investigation of the attack, but only “to the extent respondent denied disclosure on the basis of the privacy rights of close family relatives of 9/11 victims.” (3 AD3d at 342.) The Court explained that while the family members should not have been permitted to intervene to the extent that respondent’s denial *616 was based upon other grounds (see 3 AD3d at 341), they should have been granted permission to the extent that disclosure of some of the radio dispatch tapes was denied based upon the personal privacy exemption under Public Officers Law § 87 (2) (b) and § 89 (2) (b) (iv), because “[disclosure of the highly personal expressions of persons who were facing imminent death, expressing fear and panic, would be hurtful to a reasonable person of ordinary sensibilities who is a survivor of someone who made a 911 call before dying” (3 AD3d at 342).
In contrast, MBYC alleges only that the transcripts of the Rosenshein depositions contain “significant information concerning the operations and finances of the Club.” (Sachs aff at 2.) MBYC also argues, without support in the Sachs affidavit, that “much of the testimony at the [Rosenshein depositions] and many of the documents produced relate to such matters as names of Club members, membership statistics, Club income, Club expenses and the like.” (MBYC mem of law at 12.) The potential effects of a judgment in an article 78 proceeding upon one’s business, finances or property can, of course, be sufficient to warrant intervention, but a movant must provide more than “only speculative proof regarding the potential . . . effects” it may suffer if the petition in the proceeding in which it seeks to intervene is granted. (Matter of Pace-O-Matic, Inc. v New York State Liq. Auth., 72 AD3d 1144, 1145 [3d Dept 2010].)[8] Here, MBYC has provided no proof, merely conclusory statements, that it will suffer any potential effects if the petition is granted. There is no allegation that or in what specific manner the club itself might sustain, for example, a financial setback, competitive disadvantage, or some form of liability — and no evidentiary basis from which to infer that it would — by the disclosure of information and documents concerning its operations, finances, income and expenses. Nor is there any allegation that the club’s members might be hurt, embarrassed or even inconvenienced by the disclosure of information related to membership names and statistics.
*617 In sum, MBYC has failed to show that it would be directly affected by, or have a real and substantial interest or legally cognizable claim in, a determination of the petition directing the disclosure of the information and documents which it allegedly seeks intervention to prevent. Therefore, to the extent that MBYC seeks permission to intervene pursuant to CPLR 7802 (d), its motions are denied.
Motions to Dismiss for Failure to Join Necessary Parties
The motions to dismiss the instant proceeding for failure to join the MBYC entities as respondents are denied. Pursuant to CPLR 1001 (a), a person should be joined in an action or proceeding[9] where necessary “if complete relief is to be accorded between the persons who are parties” thereto or where the person to be joined “might be inequitably affected by a judgment” therein. And pursuant to CPLR 1003, “[n]onjoinder of a party who should be joined under section 1001 is a ground for dismissal.” In an application based upon the failure to join a necessary party, the burden is upon the movant to demonstrate one or the other of the circumstances delineated in CPLR 1001 (a). (See Spector v Toys ”R” Us, Inc., 12 AD3d 358, 359 [2d Dept 2004].) MBYC does not allege or argue that without it complete relief cannot be accorded between petitioner and the Village in the instant proceeding, and MBYC has failed to demonstrate that it might be inequitably affected by a judgment herein.
MBYC’s lamentations over the possible disclosure of information contained in the Rosenshein depositions notwithstanding, the mere fact that a nonparty may dislike, disagree with, or despair of a potential judgment does not mean that it might be inequitably affected thereby within the meaning of CPLR 1001 (a). “This statute ‘limit[s] the scope of indispensable parties to those cases and only those cases where the determination of the court will adversely affect the rights of nonparties’ (Matter of Castaways Motel v Schuyler, 24 NY2d 120, 125 [1969]).” (Mason Tenders Dist. Council Welfare Fund v Diamond Constr. & Maintenance, Inc., 84 AD3d 754, 755 [2d Dept 2011].) Thus, joinder is required where there is a real possibility that the judgment might diminish or derogate a nonparty’s rights or constrain the nonparty from exercising or enjoying its rights. (See Matter of Ferrando v New York City Bd. of Stds. & Appeals, 12 AD3d 287, *618 288 [1st Dept 2004]; Matter of Karmel v White Plains Common Council, 284 AD2d 464, 465 [2d Dept 2001].) Joinder is not required where, regardless of the court’s determination, the judgment can have no influence upon the conduct of the nonparty or the integrity of its rights. (See Matter of Castaways Motel v Schuyler, 24 NY2d at 125, and compare with City of New York v Long Is. Airports Limousine Serv. Corp., 48 NY2d 469, 475 [1979].)
Judgment in the instant proceeding will neither have an impact upon MBYC’s rights nor have an influence upon its conduct. In her FOIL application petitioner sought the release only of materials which had not been designated as “ ‘confidential’ within the time periods set forth in paragraph 2 (b)” of the confidentiality order (record exhibit 16), and MBYC has failed to demonstrate that it has any rights pursuant to which the Village is otherwise prohibited from releasing materials not so designated. Thus, whatever rights MBYC enjoys under the terms of the confidentiality order will be undiminished regardless of the court’s determination and a judgment directing the Village to comply with petitioner’s FOIL application can have no impact upon such rights. Further, no action, inaction or decision of MBYC is being considered, all of the materials at issue are in the exclusive physical possession of the Village and none are in the possession of MBYC, and the relief sought does not require MBYC’s participation, consent or acquiescence. Thus, even if the MBYC entities were parties to the instant proceeding, there is nothing different they would do or refrain from doing if the petition were granted than they would do or not do if it were denied; in either event, MBYC would have no legal or practical obligations whatsoever. Since a judgment in the instant proceeding can have no influence upon MBYC’s conduct and no impact upon its rights, MBYC has failed to demonstrate that it might be inequitably affected by such judgment within the meaning of CPLR 1001 (a).
Moreover, the Village, the named respondent in the instant proceeding, was also a party to the damages action and bound by the confidentiality order. Both in its denial of the FOIL application and its opposition to the petition, the Village has invoked the same provisions of and made the same arguments based upon the confidentiality order as has MBYC in support of the instant application. Dismissal of an action for failure to join a necessary party “is not warranted where, as here, the interests of the named party and the nonjoined party are so intertwined *619 that there is virtually no prejudice to the nonjoined party.” (Sawicki v County of Suffolk, 4 AD3d 465, 466 [2d Dept 2004]; cf. Matter of Storrs v Holcomb, 245 AD2d 943, 946 [3d Dept 1997].)
Therefore, the MBYC entities are not necessary parties and their motions to dismiss the instant proceeding for petitioner’s failure to join them as respondents is denied.
The Village’s Objections in Point of Law
In the answer, the Village has interposed 10 objections in point of law, eight of which it denominates as affirmative defenses, and none of which have merit. The Village’s “First Objection In Point Of Law” and “Second Objection In Point Of Law” do not, in fact, raise objections in point of law which may be set forth in an answer to a petition under CPLR 7804 (f), but merely ask that the court not consider allegations in the petition which are, or which relate to matters which are, “outside of the administrative record.”[10] The court has not considered any matters dehors the record in its determination of the instant proceeding.
The objection in point of law which the Village refers to as its “First Affirmative Defense” is denied. The Village alleges that “[t]he Notice of Petition is defective because it failed to comply with CPLR 403 (a) in that the return date falls on a weekend. Accordingly, this Court lacks jurisdiction over the subject matter.” (Answer, first affirmative defense, at 10.) The designation in a notice of motion or petition of a return date which falls on a weekend does not, of itself, render the application jurisdiction-ally defective. (See Sailer v Contarino, 129 AD2d 788 [2d Dept 1987].) In any event, “[a]ny alleged technical defect as to the [return] date on the notice of petition invokes a claim of improper commencement or personal jurisdiction, at best.” (Matter of Ballard v HSBC Bank USA, 6 NY3d 658, 664 [2006].) Thus, the defective designation in the NOP of a Saturday return date did not deprive the court of jurisdiction over the subject matter of the instant proceeding. Moreover, a respondent waives its right to challenge such a defect “by actively participating in the proceeding without timely objecting to the defect on personal jurisdiction grounds.” (Id.) The objection in point of *620 law at issue (“First Affirmative Defense”) is based solely on an alleged lack of subject matter jurisdiction and the Village did not otherwise interpose a challenge for lack of personal jurisdiction. Thus, the Village has waived its right to challenge the defect on personal jurisdiction grounds.
And even had the Village timely objected to the petition for lack of personal jurisdiction, the court would be obligated to disregard the defect and deny the objection. If a substantial right of a party is not prejudiced thereby, a court must disregard a mistake, defect or irregularity in the commencement of an action or special proceeding. (See CPLR 2001; MacLeod v County of Nassau, 75 AD3d 57, 63-65 [2d Dept 2010].) The Village does not allege that it was prejudiced in any way or to any degree by the designation of a Saturday return date. Indeed, although the court has not been advised as to the date on which the petition was served, the Village served its answer 37 days after the petition was filed, which still left sufficient time so that petitioner served and filed her reply before the erroneous return date. Thus, the Village had adequate notice of the petition {see CPLR 403 [b]) and has suffered no prejudice that would dilute the court’s obligation to disregard the defect in the commencement of the instant proceeding. (See Matter of United Servs. Auto. Assn. v Kungel, 72 AD3d 517 [1st Dept 2010].) Therefore, the objection in point of law for lack of jurisdiction is denied.
In the objection in point of law referred to as its “Fifth Affirmative Defense” the Village alleges that “the Petition should be dismissed for failure to join a necessary party [i.e., MBYC].” (Answer at 11.) This objection is denied for the reasons stated in the determination of MBYC’s motions for the same relief, supra.
The Merits of the Proceeding
In the objection in point of law referred to as its “Second Affirmative Defense” the Village alleges that the “Petition fails to state a cause of action.” (Answer at 10.) In the objection in point of law referred to as its “Third Affirmative Defense” the Village alleges that petitioner’s FOIL application was properly denied under Public Officers Law § 87 (2). {See answer at 11.) In the objection in point of law referred to as its “Fourth Affirmative Defense” the Village alleges that “Respondent fully complied with all requirements of law.” {Id.) In the objection in point of law referred to as its “Sixth Affirmative Defense” the Village alleges that “[i]f the Petitioner obtained the requested court records from the Westchester County Clerk’s office then *621 the issue is moot.” (Id.) In the objection in point of law referred to as its “Seventh Affirmative Defense” the Village alleges that “[e]ven assuming arguendo that Petitioner prevailed in the underlying lawsuit she would not be entitled to recover attorney fees because she is a pro se litigant” (id.), and in the objection in point of law referred to as its “Eighth Affirmative Defense” the Village alleges that it “had more than a reasonable basis for its denial and therefore, there would be no basis to award attorneys’ fees under any circumstances” (id. at 12). Because the Village opted to interpose these objections in its answer rather than in a motion to dismiss (see CPLR 7804 [f]), the court will “pass not only upon [the Village’s] objections but also upon the merits of the proceeding.” (Matter of Levien v Board of Zoning & Appeals of Inc. Vil. of Russell Gardens, 64 Misc 2d 40, 41 [Sup Ct, Nassau County 1970].)
“It is settled that a special proceeding is subject to the same standards and rules of decision as apply on a motion for summary judgment, requiring the court to decide the matter ‘upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised’ (CPLR 409 [b]).” (Karr v Black, 55 AD3d 82, 86 [1st Dept 2008] [citations omitted]; see also Matter of Bahar v Schwartzreich, 204 AD2d 441, 443 [2d Dept 1994] [applying summary judgment standard in article 78 proceeding].)
Applying in the instant proceeding the standards and rules of decision as apply on a motion for summary judgment (see Zuckerman v City of New York, 49 NY2d 557, 562 [1980]), the court determines that the pleadings, papers and admissions, including the record, contain evidentiary proof sufficient to establish that petitioner is entitled to judgment as a matter of law and that no triable issues of fact have been raised.
The denial of petitioner’s FOIL application was unlawful. “FOIL imposes a broad duty on government to make its records available to the public.” (Matter of Gould v New York City Police Dept., 89 NY2d 267, 274 [1996].) Thus, analysis of the propriety of an agency’s denial of a FOIL application begins with the principle that “[a]ll government records are . . . presumptively open for public inspection and copying unless they fall within one of the enumerated exemptions of Public Officers Law § 87 (2).” (Id. at 274-275.) “Those exemptions are to be narrowly construed, with the burden resting on the agency to demonstrate that the requested material indeed qualifies for exemption” (Matter of Hanig v State of N.Y. Dept. of Motor Vehs., 79 *622 NY2d 106, 109 [1992]), and an application for the disclosure of materials in an agency’s possession may be denied “[o]nly where the material requested falls squarely within the ambit of one of these statutory exemptions” (Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979]). If the agency “fails to prove that a statutory exemption applies, FOIL ‘compels disclosure, not concealment.’ ” (Matter of Data Tree, LLC v Romaine, 9 NY3d 454, 463 [2007] [citation omitted].) The Village has failed to satisfy its burden to prove that the materials to which petitioner seeks access qualify for exemption under any of the provisions of Public Officers Law § 87 (2).
Initially, the village manager denied petitioner’s application because “[disclosure is not required where the material is attorney’s work product or material prepared for litigation before judicial, quasi-judicial or administrative tribunals, as described in CPLR sections 3101 (c) and (d).” {See record exhibit 2.) There was no further explanation and no reference to Public Officers Law § 87 (2). In opposition to the petition the Village now alleges that “[t]he documents and records Ms. McCrory sought were related to a litigation and the Village had only obtained these documents as a result of privileged communications with its outside counsel” (Slingerland aff at 3), and contends that denial of petitioner’s application for the release thereof was permitted under Public Officers Law § 87 (2) (a) because the materials were exempt from disclosure under CPLR 3101 (c) and (d) {see mem of law in opposition to petition [hereafter Village mem of law] at 2).
Pursuant to Public Officers Law § 87 (2) (a) an “agency may deny access to records or portions thereof that: (a) are specifically exempted from disclosure by state or federal statute.” However, the Court of Appeals has held that CPLR article 31 is not such a statute. (Matter of M. Farbman & Sons v. New York City Health & Hosps. Corp., 62 NY2d 75, 81 [1984].) Article 31 is concerned only with the exchange of information, documents and materials between parties within the same civil action, and the rules governing such exchanges are not interchangeable with the rules governing FOIL disclosure merely because the same materials may be at issue. (See Matter of DeCorse v City of Buffalo, 239 AD2d 949, 950 [4th Dept 1997]; cf. Marten v Eden Park Health Servs., 250 AD2d 44, 47-48 [3d Dept 1998].)
In any event, the Village has failed to establish that the materials sought by petitioner were the product of privileged communications between the Village and its outside counsel {see *623 CPLR 3101; 4503 [a]), or that they constitute attorney’s work product (see CPLR 3101 [c]) or material prepared for litigation (see CPLR 3101 [d]). “The attorney-client privilege applies only to confidential communications with counsel, not to information obtained from or communicated to third parties, or to underlying factual information.” (Eisic Trading Corp. v Somerset Mar., 212 AD2d 451, 451 [1st Dept 1995] [citations omitted].) To qualify for the privilege such communications must have been made for the purpose of obtaining or facilitating the rendition of legal advice or services. (See Rossi v Blue Cross & Blue Shield of Greater N.Y., 73 NY2d 588, 593 [1989].) Transcripts memorializing the statements of witnesses obtained during the discovery process do not constitute attorney’s work product within the meaning of CPLR 3101 (c) merely because a party’s attorney conducted or was present at the deposition (cf. Matter of Morgan v New York State Dept. of Envtl. Conservation, 9 AD3d 586, 588 [3d Dept 2004]) any more than a client’s possession of copies of such transcripts is the result of a privileged communication merely because they were physically delivered to the client by that attorney. Thus, disclosure of the Rosenshein depositions would not violate CPLR 3101 (b) or (c). Further, the protection accorded by CPLR 3101 (d) (2) applies only to material prepared in anticipation of the litigation in which the protection is invoked (see Marten v Eden Park Health Servs., 250 AD2d at 47); any material which may have been prepared in the context of other or prior litigation is not protected (see Barcelar v Pan, 12 Misc 3d 1162[A], 2006 NY Slip Op 51009[U] [Sup Ct, Westchester County 2006] [citing Marten]). So even assuming that the material which petitioner seeks would be entitled to protection under CPLR 3101 (d) (2) in the damages action, it is not entitled to such protection in the instant proceeding because it was not prepared in anticipation of the instant proceeding. Therefore, denial of petitioner’s application for the first reason stated by the village manager was unlawful.
The second reason given by the village manager for denying petitioner’s FOIL application was that “under the parameters of th[e] Confidentiality Order . . . the Village is prohibited from releasing the materials you have requested, including the depositions of Lisa Rosenshein and Bernard Rosenshein.” (Record exhibit 10.) That, too, was unlawful. Not only did the village manager again fail to provide an explanation that would have justified the denial under Public Officers Law § 87 (2), but, ultimately, he implied that petitioner could be denied access to the Rosenshein depositions under the confidentiality order even *624 if its parameters had not been complied with. (See record exhibit 17.) Rather than adopting this absurd premise, the Village now appears to argue in the alternative (1) that disclosure on a FOIL application of anything designated as confidential material in compliance with the confidentiality order is prohibited by the confidentiality order itself and (2) that even without such an express prohibition, anything so designated would also qualify for exemption under Public Officers Law § 87 (2) (b) because disclosure would violate the Village’s privileged relationship with its attorney. (See Village mem of law at 2-4.)
The court will first address argument number two. Pursuant to Public Officers Law § 87 (2) (b) an agency is permitted to deny a FOIL application “if disclos[ure] would constitute an unwarranted invasion of personal privacy under the provisions of subdivision two of section eighty-nine of this article.” But the persons whose privacy the statute is meant to protect are those individuals or entities from whom materials were originally obtained or about whom the materials may be concerned (see Public Officers Law § 89 [2] [b]; Matter of Humane Socy. of U.S. v Fanslau, 54 AD3d 537 [3d Dept 2008]), not the agency from which disclosure is sought. So the fact that the Village “obtained these documents as a result of privileged communications with its outside counsel” (Village mem of law at 2-3) is immaterial to the determination of whether the documents are exempt from disclosure under Public Officers Law § 87 (2) (b). Moreover, “[w]hat constitutes an unwarranted invasion of personal privacy is measured by what would be offensive and objectionable to a reasonable man of ordinary sensibilities.” (Matter of Dobranski v Houper, 154 AD2d 736, 737 [3d Dept 1989].) Thus, in order to justify the denial of petitioner’s application on this ground the Village bore the burden to prove (see Matter of Data Tree, LLC v Romaine, 9 NY3d at 463) that the disclosure of materials to which its attorneys became privy during the discovery phase of the damages action would be so offensive and objectionable as to constitute an unwarranted invasion of the personal privacy of MBYC or the club’s members. The Village has made no allegations or submitted any evidence which would satisfy its burden.[11]
The Village also implies that disclosure would constitute an invasion of privacy because the materials at issue were provided *625 to the Village — including information conveyed during and gleaned from the Rosenshein depositions — in reliance on the confidentiality order and the providers’ belief that they would not be disclosed to any third party, for any reason, at any time. (See Village mem of law at 3 [“The Village would have been subject to liability had it released documents in contravention of the Confidentiality Order”].) However, “none of the statutory exemptions [under Public Officers Law § 87 (2)] empowers a government agency to immunize a document from FOIL disclosure by designating it as confidential, either unilaterally or by agreement with a private party.” (Matter of City of Newark v Law Dept. of City of N.Y., 305 AD2d 28, 32 [1st Dept 2003].) And our appellate courts have refused to create or recognize an extra-statutory exemption based upon a provider’s reliance upon a perceived cloak of confidentiality — whether that perception resulted from an actual promise by the agency or was inferred by the provider. (See Matter of Washington Post Co. v New York State Ins. Dept., 61 NY2d 557, 567 [1984]; Matter of Bello v State of N.Y. Dept, of Law. 208 AD2d 832, 833 [2d Dept 1994].)
As to argument number one, there is no language in the confidentiality order which prohibits the Village from disclosing anything in response to a FOIL application merely because that thing has been designated as confidential material. The confidentiality order was issued pursuant to the court’s authority under CPLR 3103 (a) to regulate discovery in civil actions, and the only language that could conceivably be cited in support of the Village’s position that it was meant to have some application beyond that purpose states that “a non-party [to the damages action] may not be shown Confidential Material except upon compliance with Paragraphs 2 or 3 of this Confidentiality Order.” (Confidentiality order If 3 [d] at 5.) But construing that phrase to constitute a prohibition against FOIL disclosure would contravene the clear legislative declaration of public policy set forth in Public Officers Law § 84. (See Matter of M. Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d at 80.) Indeed, a court order which purported to exempt materials from disclosure on FOIL applications to be submitted in the future *626 would be subject to challenge on several grounds, particularly where, as here, that order permitted an agency to determine for itself what materials would be insulated from disclosure. (See e.g. Matter of City of Newark v Law Dept. of City of N.Y., 305 AD2d at 32-33; Matter of LaRocca v Board of Educ. of Jericho Union Free School Dist., 220 AD2d 424, 427 [2d Dept 1995].) Therefore, the disclosure on a FOIL application of confidential material was not prohibited by the confidentiality order itself.
Moreover, even assuming that such a prohibition was anticipated in the confidentiality order and would be enforceable, argument number one also fails because for several reasons the Village has failed to establish that granting petitioner’s FOIL application would violate the confidentiality order.
First, as discussed supra, petitioner did not seek access to anything that had been designated as confidential material in compliance with the confidentiality order and expressly excluded from her application any materials that had been so designated. (See record exhibit 16.)
Second, pursuant to the “parameters of th[e] Confidentiality Order” on which the Village relies, it was required to destroy any materials so designated or return them to MBYC within 60 days after the damages action was terminated. (See confidentiality order 11 8 at 6.) Since the parties had waived any right to appeal (see SCJ 1111 at 18), the damages action was terminated within the meaning of the confidentiality order no later than the filing of the executed SDWP with the Westchester County Clerk on January 13, 2011. Presumably, therefore, the Village had returned or destroyed any confidential material before the instant proceeding was commenced on March 23, 2011, and it submitted materials still in its possession for in camera inspection.
Third, upon in camera inspection of all of the materials submitted by the Village the court finds that no portion thereof has been designated as confidential material in compliance with the procedure for doing so set forth in the confidentiality order. The only manner in which deposition transcripts or portions thereof could be designated as confidential material was “in writing, served on the parties . . . within five (5) business days after receipt of the transcript from the party noticing the deposition.” (Confidentiality order 1i 2 [b] at 2.) And where deposition transcripts or portions thereof were so designated each party was required to “stamp the covers of original and each copy of the transcript in their possession with the word *627 ‘CONFIDENTIAL.’ ” (Id.) While the Village repeatedly alleges that many lines and pages of the Rosenshein depositions had been “marked” or “designated” as confidential (see e.g. supplemental affirmation in opposition to petition [hereafter supplemental affirmation] at 2; Lupkin aff at 2-3), none of those lines and pages nor any other line or page of the transcripts submitted for the court’s inspection had been so marked, and none of the covers of said transcripts bore any stamp or writing of the word “CONFIDENTIAL” (see also record exhibit 17). Indeed, in the whole of the Rosenshein depositions there are but two instances in which the confidentiality order or the designation as confidential of materials or testimony thereunder are even mentioned. (See transcript of deposition of Lisa Rosenshein at 619-620; transcript of deposition of Bernard J. Rosenshein at 697-700.) These instances consist of colloquy among counsel concerning the intent to designate and the required procedure for doing so — i.e., in writing — but the Village has not alleged or submitted any evidence that the confidentiality of any portion of the Rosenshein depositions was actually designated in writing.
Fourth, the Village alleges that a substantial portion of the transcript of the deposition of Lisa Rosenshein was “designated as confidential in connection with a separate^ i.e., separate from the confidentiality order], on-the-record confidentiality order issued by Justice Orazio Bellantoni on July 28, 2009” (Lupkin affirmation n 2 at 2), and has submitted in support a three-page excerpt from the transcript of the July 28, 2009 proceeding. (A copy of the excerpt is annexed to the Lupkin affirmation as exhibit 2.) Also, the following statement of Jonathan D. Lupkin, Esq. — the attorney who represented MBYC at the depositions— concerning a document as to which Mr. Rosenshein was being examined appears at page 697 of the transcript of his deposition: “This document by its terms was marked highly confidential pursuant to an Order by Justice Bellantoni issued on July 29, 2009.” However, the colloquy between the court and counsel presented in the excerpt from the July 28, 2009 proceeding does not identify a specific document and does not include any directive by Justice Bellantoni that any document or potential deposition testimony would be designated as “confidential” or “highly confidential.” And the Village has not alleged or submitted any evidence that Justice Bellantoni issued a second order on July 29, 2009, or that pursuant to any order issued by Justice Bellantoni the confidentiality of any document or deposition testimony was actually designated in writing.
*628 Fifth, pursuant to the confidentiality order the only manner in which materials or documents other than transcripts — e.g., such as may have been produced in response to a subpoena duces tecum — could be designated as confidential material was “by stamping the documents or materials with the words ‘CONFIDENTIAL’ at the time of production of the documents or other materials to counsel for the party or parties receiving the Confidential Material.” (Confidentiality order 1Í 2 [b] at 2.) The Village has failed to submit for in camera inspection any materials that may have been produced in response to the Taylor Point subpoena, alleging only that “Mr. Lupkin affirms that all [such] documents were marked ‘confidential’ within the meaning of the Confidentiality Order and in any event, Mr. Lupkin confirms that these documents should no longer be in the possession of the Village of Mamaroneck or its counsel.” (Supplemental affirmation at 2.) However, the Village did not certify (see Public Officers Law § 89 [3] [a]) and does not allege that such materials are not in its possession,[12] and Mr. Lupkin also affirms that none of “the confidential portions of deposition transcripts” should be in the Village’s possession (Lupkin affirmation at 4) — yet, those same allegedly “confidential portions” of which Mr. Lupkin speaks were submitted by the Village and inspected by the court.
Particularly in light of such contradictory evidence in the record, the conclusory and unsubstantiated allegations offered by the Village are insufficient to satisfy its burden in the instant proceeding. (See Zuckerman v City of New York, 49 NY2d at 562.) Therefore, the Village has failed to establish that granting petitioner’s FOIL application and disclosing to her whatever portions of the Rosenshein depositions and materials produced in response to the Taylor Point subpoena are in the possession of the Village would violate the confidentiality order.
Petitioner alleges that she has “searched the public records of the Westchester County Clerk’s office, particularly with respect to [the damages action, and that during such search she] identified extensive deposition material and other discoverable material available as exhibits to pleadings” (petition 1i 48 at 14), including pages of the Rosenshein depositions which were “not marked as confidential” (see id. 1Í1Í 49-53 at 14-15). While petitioner made these allegations in support of her argument *629 that the fact that said materials are part of other public records is further evidence that disclosure would not violate the confidentiality order, the Village contends that if petitioner has obtained from the Westchester County Clerk the same materials to which she seeks access from the Village on her FOIL application “then the issue is moot.” (See answer, sixth affirmative defense at 11.) The Village’s contention is unavailing. There is no provision in Public Officers Law § 87 (2) or any other state or federal statute exempting materials from disclosure on a FOIL application because such materials are also available or have been acquired from another agency; so denial of petitioner’s application for such reason would be unlawful. (See Matter of Gould v New York City Police Dept., 89 NY2d at 274-275; Matter of Fink v Lefkowitz, 47 NY2d at 571.) Therefore, no issue in the instant proceeding was rendered moot by petitioner’s discoveries during her search of the public records of the Westchester County Clerk.
Finally, petitioner seeks from the court judgment assessing against the Village “costs and attorney fees associated with this special proceeding.” (Petition at 19.) Pursuant to Public Officers Law § 89 (4) (c), in an article 78 proceeding brought for review of an agency’s denial of a FOIL application, the court “may assess, against such agency involved, reasonable attorney’s fees and other litigation costs reasonably incurred by [the petitioner] in any case ... in which such person has substantially prevailed, when: i. the agency had no reasonable basis for denying access.” Upon in camera inspection the court finds that disclosure of the following portions of the transcripts of the deposition of Bernard J. Rosenshein — who is now deceased — would constitute an unwarranted invasion of the personal privacy of the surviving members of Mr. Roenshein’s family: (page) 8: (line) 23 through 13:15; 320:23 through 321:17; 504:6 through 504:21; 514:12 through 515:14; 712:23 through 714:19; 716:16 through 719:20; and 722:5 through 722:17. Thus, although the village manager did not so indicate, the Village could have denied petitioner access to said portions under Public Officers Law § 87 (2) (b). However, aside from those very limited exceptions, the village manager had no reasonable basis for denying access to any other materials “relating to depositions and supporting subpoena material from” (record exhibit 1) litigations which were settled pursuant to the SCJ — including, but not limited to, the balance of the Rosenshein depositions which were submitted for in camera inspection and, to the *630 extent they were in the Village’s possession, the transcripts of the deposition of Bernard J. Rosenshein which was noticed by MBYC and any materials which were produced in response to the Taylor Point subpoena. Therefore, petitioner has substantially prevailed in the instant proceeding within the meaning of Public Officers Law § 89 (4) (c). (See Matter of New York State Defenders Assn. v New York State Police, 87 AD3d 193, 195-196 [3d Dept 2011].)
Nevertheless, petitioner’s application for fees and costs cannot be determined on the existing record. An award of attorney’s fees is not authorized under FOIL for a pro se petitioner who has not actually “incurred the responsibility to pay attorney’s fees.” (Matter of Leeds v Burns, 205 AD2d 540, 540 [2d Dept 1994], lv denied 84 NY2d 811 [1994]; but see contra Matter of Purcell v Jefferson County Dist. Attorney, 77 AD3d 1328 [4th Dept 2010].) In the petition petitioner alleged, “I have prepared this petition pro se but expect to consult an attorney before the matter is filed.” (Petition 1Í 81 at 18.) In the reply petitioner alleges, “I have not used an attorney to prepare the papers (although I did consult one).” (Reply H 41 at 9.) However, petitioner has not alleged the amount, if any, which she incurred the responsibility to pay as a result of such consultation, nor has she submitted an attorney’s affirmation of the time expended in and fees charged for services actually rendered.
Accordingly, for the foregoing reasons: the motions by Mamaroneck Beach & Yacht Club, Inc., Mamaroneck Beach & Yacht Club LLC, and Taylor Point Associates, Inc., to transfer the instant proceeding to the Environmental Claims Part, to intervene in the instant proceeding, and to dismiss the instant proceeding for failure to join necessary parties are denied; the petition is granted; and the decisions of the village manager for the Village of Mamaroneck dated December 13, 2010, January 4, 2011, and January 14, 2011, denying petitioner’s FOIL application of November 17, 2010, as clarified by petitioner in further correspondence to the village manager on January 14, 2011, are annulled.
Within 15 days of service upon the Village of Mamaroneck of a copy of this decision and order with notice of entry, the village manager shall provide petitioner with: copies of the transcripts of the depositions of Lisa Rosenshein and Bernard J. Rosenshein taken in the damages action, regardless of by whom said depositions were noticed; access to any documents, records and materials which were produced in response to the Taylor Point *631 subpoena; and access to any and all other transcripts, records, documents and materials in the possession of the Village which fall within the parameters of petitioner’s FOIL application of November 17, 2010, as clarified by petitioner in further correspondence to the village manager on January 14, 2011. In the event that the village manager chooses to deny petitioner access to portions of the transcripts of the deposition of Bernard J. Rosenshein in accordance with the court’s determination herein that said portions would be exempt under Public Officers Law § 87 (2) (b), the village manager may do so by redacting the copies provided to petitioner. In the event that the village manager claims that any transcript, document, record or material is not in the possession of the Village, the village manager shall within the aforesaid time period certify to petitioner in writing that the Village does not have possession thereof and that such transcript, document, record or material could not be found after a diligent search — said certification shall include an explanation of the efforts constituting such diligent search.
Within 15 days after her receipt from the village manager of the copies, documents, records, materials and certifications as aforesaid, petitioner may submit on notice a proposed judgment assessing attorney’s fees and litigation costs with an affidavit of the financial responsibility she has incurred, an affirmation of attorney’s services actually rendered, and a bill of costs. The obligations hereunder of the Village of Mamaroneck and the village manager are not conditioned or dependent upon petitioner’s submission of a proposed judgment.

. The proposed stay was struck by the court (Warhit, A.J.S.C.).

. Hereafter, documents — including copies of e-mails — submitted as exhibits in the certified record will be cited as “record exhibit_.”

. The COG is “a unit housed in the [New York State] Department of State that oversees and advises the government, public, and news media on Freedom of Information, Open Meetings, and Personal Privacy Protection Laws [Public Officers Law articles 6, 7 and 6-A respectively.]” (http:// www.dos.state.ny.us/coog/, accessed Nov. 20, 2011).

. CPLR 1012 (a) also provides that intervention shall be permitted “[w]hen a statute of the state confers an absolute right to intervene; or . . . [w]hen the action involves the disposition or distribution of . . . property.” (CPLR 1012 [a] [1], [3].) MBYC does not allege that any statute confers upon *613 it an absolute right to intervene, and this proceeding does not involve the disposition or distribution of property.

. (See Sachs aff at 2 [“Due to the confidentiality of the information that was brought up during (the Rosenshein depositions), the Club believes that the release of any part of the transcript of these depositions would constitute a violation of the Confidentiality Order approved by Justice Lippman on June 16, 2006”].)

. General Municipal Law § 805-a (1) provides that “[n]o municipal officer or employee shall: ...(b) disclose confidential information acquired by him in the course of his official duties or use such information to further his personal interests.”

. The Village did not invoke an exemption under subdivision (d) of section 87 (2) because it could not have sustained its burden of proof. (See Public Officers Law 89 § [5] [f].) Indeed, MBYC’s own papers would be inadequate to do so successfully. “The party seeking the benefit of the exemption must ‘present specific, persuasive evidence that disclosure will cause it to suffer a competitive injury; it cannot merely rest on a speculative conclusion that disclosure might potentially cause harm’ (Matter of Markowitz v Serio, 11 NY3d at 51).” (Matter of Verizon N.Y., Inc. v Mills, 60 AD3d 958, 959 [2d Dept 2009]; see also Public Officers Law § 89 [5] [a], [e].)

. (See also e.g. Berkoski v Board of Trustees of Inc. Vil. of Southampton, 67 AD3d 840, 842-844 [2d Dept 2009] [holding that “two individual day laborers” should have been granted permission to intervene under CPLR 1013 in action for judgment declaring unlawful and enjoining proposed plan to use public park as designated area for hiring day laborers, but that “two individual immigrant rights advocates . . . and an immigrant rights organization” “(were) not entitled to intervene as a matter of discretion because they do not have a real and substantial interest in the outcome of the proceedings”].)

. CPLR 1001 (a) applies to article 78 proceedings. (See Matter of 27th St. Block Assn. v Dormitory Auth. of State of N.Y., 302 AD2d 155, 160 [1st Dept 2002].)

. The “objections” referred to in CPLR 7804 (f) are not evidentiary, but “ ‘threshold objections of the kind listed in CPLR 3211 (a), which are capable of disposing of the case without reaching the merits.’ ” (Matter of Hop-Wah v Coughlin, 118 AD2d 275, 277 [3d Dept 1986] [citations omitted], read on other grounds 69 NY2d 791 [1987]; see also Siegel, NY Prac § 567, at 979 [4th ed].)

. Nor would the allegations made in support of MBYC’s motions to intervene in order to protect its interest under Public Officers Law § 87 (2) (b) (see discussion, supra), even if proven, be sufficient to satisfy the burden. The *625 disclosure of “significant information concerning the operations and finances of the Club” (Sachs aff at 2) and documents which “relate to such matters as names of Club members, membership statistics, Club income, Club expenses and the like” (MBYC mem of law at 12), would not be offensive and objectionable to a person of reasonable sensibilities. (See e.g. Matter of Humane Socy. of U.S. v Fanslau, 54 AD3d at 538.)

. In contrast, the Village does allege that transcripts of the deposition of Bernard J. Rosenshein which was noticed by MBYC, rather than by the Village, are not in its possession. (See supplemental affirmation at 2.)