■ Benjamin J. Kripke, Appellant, v Benedictine Hospital et al., Respondents. [680 NYS2d 687] —Per Curiam. Appeals (1) from an order of the Supreme Court (Carpinello, J.), entered March 8, 1996 in Ulster County, which, *inter alia*, granted defendants' motion for summary judgment dismissing the complaint, and (2) from an order of said court (Bradley, J.), entered March 11, 1997 in Ulster County, which, *inter alia*, denied plaintiff's motion for reconsideration.

From 1983 until 1992, plaintiff served as the Chair of the Department of Anesthesiology (hereinafter the Department) at defendant Benedictine Hospital (hereinafter the Hospital) in the City of Kingston, Ulster County. His service was governed by a contract entered into by and between Benjamin J. Kripke, M.D., P. C. (hereinafter the professional corporation)* and the Hospital. Such agreement granted the professional corporation the exclusive right to provide anesthesia services at the Hospital, appointed plaintiff as the Department Chair "with such duties and responsibilities as may be established by the Board of Directors", and obligated it to ensure the employment of five full-time anesthesiologists and manage the daily schedule of the Hospital's operating room.

While plaintiff's expertise as an anesthesiologist was not criticized, from as early as 1989 his administrative skills in directing, supervising and scheduling anesthesia services at the Hospital were seriously called into question by the Operating Room Committee (hereinafter O.R. Committee) and the Department of Surgery due, in part, to the rapid turnover of anesthesiologists and what appeared to be plaintiff's frequent absences. The record reveals that despite the fact that plaintiff was advised of these problems at such time, they continued

---

* Plaintiff served as president and sole shareholder of the professional corporation.

into 1990 culminating in a unanimous resolution communicated to the Board of Directors by the Department of Surgery that it had "no confidence" in the Department. As demonstrated in the excerpts of the minutes of the Department of Medicine in February 1991, these concerns were echoed by the O.R. Committee.

Due to the perceived lack of attention paid to these complaints, the Department of Surgery passed a second resolution in January 1992 again advising the Board of Directors of their lack of confidence in the Department. In February 1992, the Chair of such Department, by letter to the Board of Directors, reiterated their "concerns about an absentee * * * Department Chairman, lack of full-time anesthesiologists, management of the Operating Room, and unavailability of equipment in the O.R. * * * [causing] a serious decline in surgical cases at * * * [the Hospital] during the past three years". Throughout these times, plaintiff was invited in his capacity as the Chair of the Department to attend numerous meetings and specifically address the surgeons' concerns.

In May 1992, negotiations seeking to have plaintiff resign as Chair of the Department were held in an effort to resolve these problems. When that proved unsuccessful, the Board of Directors declared there to be a "crisis in the [D]epartment", forcing the adoption of a resolution specifically requiring plaintiff to, *inter alia*, work full days each Monday and Friday, be on call at least one weekend in four, attend hospital committee meetings, consult with surgeons on difficult cases and immediately hire at least five full-time anesthesiologists "to reduce the inordinate and disruptive turnover in the Department". Prior to plaintiff's written response thereto, which indicated that, other than the on-call requirement, these demands were appropriate, plaintiff was advised that the contract would not be renewed upon its expiration in December 1994. Despite this climate, plaintiff advised the Hospital, by letter five days thereafter, that in less than one week he would be taking a three-week vacation.

In August 1992, plaintiff was advised by Thomas Dee, the Hospital's Executive Vice-President, that an Anesthesia Crisis Task Force had been created which would be comprised of plaintiff as well as surgeons, nurses and administrators to deal with the lack of communication between plaintiff and the staff. It further required plaintiff to take numerous corrective actions required by the Hospital bylaws and by contractual obligations. Suffering thereafter from a heart attack and traveling to the Boston area to recuperate without the designation of

a Chair during his absence, letters continued to be sent to plaintiff advising of a continued "crisis" in the Department. On September 25, 1992, plaintiff received an offer from Boston City Hospital to become the Associate Director of Anesthesiology. Not making this information public, numerous letters continued to be sent to plaintiff outlining departmental concerns.

On November 17, 1992, plaintiff's counsel advised the Hospital that effective December 1, 1992, plaintiff would no longer serve as Chair due to the Hospital's "campaign of harassment" which had caused plaintiff "anguish, humiliation and emotional distress which has seriously affected his health by triggering a heart attack". This action was thereafter commenced, alleging constructive discharge, intentional infliction of emotional distress and tortuous interference with contract by John Blair, a surgeon at the Hospital.

After contentious discovery, defendants moved for summary judgment and plaintiff cross-moved to amend the complaint to join the professional corporation as a party. Plaintiff's second notice for discovery and production requesting minute books of the Board of Directors and of various committees for the five-year period between January 1988 and December 1992 was challenged and upheld by Supreme Court. Upon appeal, we found the request "overly broad" (222 AD2d 764).

In May 1994, while that motion was pending, the professional corporation filed a voluntary petition for bankruptcy. That petition, signed by plaintiff as president of the professional corporation, lists the contract claim against the Hospital as the corporation's main asset. The Bankruptcy Court thereafter appointed Gregory Harris as Trustee with exclusive control over all property of the professional corporation, including the claims against defendants; the Trustee promptly requested and later received copies of all pleadings in this action. Hence, at the time of defendants' motion for summary judgment, the record clearly reflects that the Trustee was aware of the outstanding motion and had not sought to intervene on behalf of the professional corporation.

Having held the motion for summary judgment in abeyance pending resolution of the appeal pertaining to discovery, Supreme Court (Carpinello, J.) thereafter dismissed plaintiff's complaint in its entirety, finding, *inter alia*, that plaintiff lacked standing to sue on the contract between the professional corporation and the Hospital and further denied plaintiff's motion to amend the complaint to include the professional corporation as a party. Upon a further denial by the

court (Bradley, J.) of the motion to renew or reargue, as well as the request to grant leave to the Trustee to intervene, these appeals ensued.

Addressing first the motion for summary judgment brought by plaintiff in his individual capacity, we agree with the dismissal of the complaint since a professional corporation does not possess a cause of action for breach of contract where the physician was not named as a party to the contract (*see, Del Castillo v Bayley Seton Hosp.*, 172 AD2d 796; *Burdett Radiology Consultants v Samaritan Hosp.*, 158 AD2d 132). As to whether Supreme Court properly denied plaintiff's motion to amend the complaint to so name the professional corporation, we again find no error. At all relevant times, the professional corporation had already filed for bankruptcy and had a Trustee appointed who was responsible to prosecute any claims on behalf of the debtor (*see, Dynamics Corp. v Marine Midland Bank-N. Y.*, 69 NY2d 191; *Weiss v Goldfeder*, 201 AD2d 644), but had taken no steps to do so. Since the right to pursue this action does not belong to plaintiff or the professional corporation, but to the Trustee who failed to act, Supreme Court appropriately denied plaintiff's motion. While our determination obviates the need to further review the substantive causes of action dismissed through the grant of defendants' motion for summary judgment, we note, as may hereinafter be relevant to the Trustee's request to intervene, that we agree with the reasoning set forth by Supreme Court as to the lack of merit to each and every cause of action.

We further find no abuse of discretion in the denial of the Trustee's request to intervene after the dismissal of the complaint (*see, Matter of Pier v Board of Assessment Review*, 209 AD2d 788, 789). Taking all relevant factors into consideration (*see, id.*, at 789), including the approximate two-year delay by the Trustee from the time that he became aware of the complaint, the completion of discovery and the filing of the note of issue before seeking permission to intervene, we find no basis to hold otherwise. With the failure to proffer any reasonable explanation or excuse therefor, and with it evident that intervention, if permitted, would only delay and unduly complicate this litigation and allege the identical causes of action already deemed by us to be without merit, we affirm the denial of the motion.

Upon our further review of the proffer made in support of the motion denominated as one for reargument or renewal, we find that it is either a motion for reargument which is not reviewable on appeal (*see, Del Castillo v Bayley Seton Hosp.*,

*supra*) or one for renewal for which we find no newly discovered evidence that was not available at the time of the making of the original motion (*see, Grassel v Albany Med. Ctr. Hosp.*, 223 AD2d 803, *lv dismissed in part, lv denied in part* 88 NY2d 842).

Accordingly, the orders of Supreme Court are affirmed in their entirety.

Mercure, J. P., Yesawich Jr., Peters, Spain and Graffeo, JJ., concur. Ordered that the orders are affirmed, with costs.