█ In the Matter of PACE-O-MATIC, INC., Respondent, v NEW YORK STATE LIQUOR AUTHORITY, Appellant. NEW YORK STATE RACING AND GAMING ASSOCIATION, INC., Proposed Intervenor-Appellant. [898 NYS2d 295]—

McCarthy, J. Appeal from a judgment of the Supreme Court (McDonough, J.), entered March 31, 2009 in Albany County, which, among other things, granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent which declared a certain game to be a gambling device.

Petitioner designed and produced a touch screen video game entitled Moxie Mania Empire Edition. After money is deposited

into the machine, the game consists of three phases. During the Moxie phase, if the player selects the proper symbol within one second of the game grid appearing, he or she wins 104% of the amount wagered. If no symbol is selected, the game progresses to the post-Moxie phase, where the player must select the proper symbol within a set time of 10 to 19 seconds and the amount of the prize is randomly selected by the machine in proportion to the difficulty of choosing the correct symbol. If at any time the player selects the wrong symbol, he or she loses the amount wagered. The perfect play phase awards a prize for selecting the correct symbol in the Moxie phase 15 consecutive times.

Prior to selling the game in New York, petitioner retained two experts who examined and tested Moxie Mania and determined that it was a game of skill, not a game of chance, such that it would not be considered a gambling device. Petitioner also sought and obtained an opinion from respondent's counsel that the game was not a gambling device.[1] After Moxie Mania was offered for sale and approximately 500 machines were installed in the state, mainly in bars, respondent began reviewing the game in response to a state senator's request for a declaratory ruling as to whether it was a gambling device. Respondent ultimately issued a ruling that Moxie Mania is an illegal gambling device.

Petitioner commenced this proceeding seeking annulment of respondent's determination. The New York State Racing and Gaming Association, Inc. (hereinafter RGA) moved to intervene or to appear as amicus curiae. Supreme Court issued a judgment in petitioner's favor and denied RGA's motion to intervene, although it granted RGA amicus status. Respondent and RGA appeal.

Supreme Court did not err in denying RGA's motion to intervene. Courts "may allow other interested persons to intervene" in special proceedings (CPLR 7802 [d]), but this permissive determination lies within the court's discretion (see Matter of Tennessee Gas Pipeline Co. v Town of Chatham Bd. of Assessors, 239 AD2d 831, 832 [1997]). The court did not abuse that discretion here, where RGA failed to substantiate its interests in the proceeding, having introduced only speculative proof regarding potential financial effects to its members if Moxie Mania is permitted. Like Supreme Court, we will grant RGA amicus curiae status and thereby consider its arguments without allowing it to intervene as a party.

Respondent has the authority and obligation to prevent

---

1. The opinion letter clearly stated that counsel's opinion was not binding on respondent and petitioner could request a declaratory ruling. Petitioner did not make such a request.

gambling in establishments it licenses (*see* Alcoholic Beverage Control Law § 105 [22]; § 106 [6]; *see also* 9 NYCRR 53.1 [m], [t]). As the Alcoholic Beverage Control Law does not contain definitions relating to gambling, respondent may reasonably rely on Penal Law definitions to determine whether a particular game or activity is permissible (*see Matter of Plato's Cave Corp. v State Liq. Auth.*, 68 NY2d 791, 793 [1986]). Under the Penal Law, gambling occurs when someone "risks something of value upon the outcome of a contest of chance" with the understanding that something of value will be awarded in the event of a certain outcome (Penal Law § 225.00 [2]). The parties agree that players in Moxie Mania pay cash to play, thus risking something of value. There is also an understanding that something of value may be obtained; winning players receive a voucher that can be cashed in at the establishment where the machine is located. The only contested aspect of the definition of gambling is whether Moxie Mania is a contest of chance. That term is defined as "any contest, game, gaming scheme or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor" (Penal Law § 225.00 [1]). "Outcome" is not defined in the statutes, but one of petitioner's experts concluded that the best definition, and the one most commonly used in the academic literature, is "the magnitude of the award, gross or net of consideration." Thus, the outcome includes both whether the player correctly solves the puzzle and what prize is awarded.

Applying these definitions to Moxie Mania, respondent did not act arbitrarily or capriciously in finding that the game was a contest of chance. Respondent acknowledged that the Moxie phase could be considered skill-based, as the reward for success is constant. While solving the puzzle in any phase may require skill,[2] the outcome in the post-Moxie phase—which includes the amount of the prize—"depends in a material degree upon an element of chance" (Penal Law § 225.00 [1]). The prize is selected at random by the machine, is not revealed until after the Moxie phase and may be more or less than a player might receive in the Moxie phase. Two players could receive different awards for solving the same number of puzzles in the same amount of time, based entirely on the randomly-selected prize amounts. The prize amount could also be different for two players winning the perfect play phase, or even for one player winning that phase at

---

**2.** One of petitioner's experts found that his performance in the game did not improve in a statistically significant way despite repeated play, raising a question as to whether the game truly involves skill.

different times. One of petitioner's experts determined that the post-Moxie phase, considered in isolation, would be a mixed game of skill and chance. The same could be true when considering that phase in conjunction with the overall game.

Respondent was entitled to rely upon the underlying information in the experts' reports without accepting the ultimate conclusions reached by petitioner's experts. Contrary to Supreme Court's assertion, respondent did not "cherry pick" statements out of context, but instead separated out certain data and conclusions from the experts' opinions, accepting some and rejecting others. Respondent reviewed those reports, saw a live demonstration of the game and spoke to petitioner's president who designed the game. Based on the information before it, while a contrary decision may also have been reasonable, we cannot say that respondent committed an error of law or acted in an arbitrary or capricious manner by determining that Moxie Mania is a contest of chance (*see Matter of Peckham v Calogero*, 12 NY3d 424, 431 [2009]; *Matter of Pizzaguy Holdings, LLC v New York State Liq. Auth.*, 39 AD3d 1072, 1073-1074 [2007]; *Matter of Rios v State Liq. Auth.*, 32 AD2d 995, 996 [1969]). Accordingly, Supreme Court should not have disturbed respondent's declaratory ruling that Moxie Mania is a gambling device that is not permitted on licensed premises.

Mercure, J.P., Lahtinen, Malone Jr. and Garry, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as annulled respondent's determination that Moxie Mania is a gambling device that is not permitted on licensed premises, and, as so modified, affirmed.