■ In the Matter of the Claim of VIDAL A. JIMENEZ, Respondent. C & I ASSOCIATES, INC., Appellant; COMMISSIONER OF LABOR, Respondent. [902 NYS2d 722]—

McCarthy, J. Appeals from two decisions of the Unemployment Insurance Appeal Board, filed January 26, 2009, which ruled, among other things, that C & I Associates, Inc. is liable for unemployment insurance contributions on remuneration paid to claimant and others similarly situated.

C & I Associates, Inc. has a contract to provide residential cable installation services to customers of Cablevision Systems, Inc. In addition to hiring employees to install cable, C & I engaged individuals it called independent contractors. Although C & I began requiring its subcontractors to sign an agreement that indicated their independent status, claimant worked as a subcontractor without having signed any agreement. When he ceased working for C & I, claimant filed a claim for unemployment insurance benefits. The Commissioner of Labor initially determined that he was an employee, as were all similarly situated individuals, and that C & I was liable for unemployment insurance contributions for those individuals. After a hearing, an Administrative Law Judge (hereinafter ALJ) overruled that determination. The Unemployment Insurance Appeal Board overruled the ALJ's decision, finding that claimant and all similarly situated cable installers were employees, making C & I liable for contributions based on remuneration paid to them. C & I appeals.

We affirm. Whether the cable installers were employees or independent contractors was a factual question for the Board to resolve, based mainly on whether C & I exercised a sufficient degree of control over the work of those individuals (*see Matter of Interlandi [Cremosa Foods Co., LLC—Commissioner of Labor]*, 70 AD3d 1150, 1150 [2010]; *Matter of Noel [Life Alert Emergency Response, Inc.—Commissioner of Labor]*, 38 AD3d 1082, 1083 [2007]; *Matter of DM & M Cable Servs. [Commissioner of Labor]*, 288 AD2d 643, 643 [2001]). Where, as here, the Board's decision is supported by substantial evidence, it will not be disturbed despite other evidence in the record that would

have supported a contrary result (*see Matter of DM & M Cable Servs. [Commissioner of Labor]*, 288 AD2d at 643).

C & I required its cable installers, whether deemed employees or subcontractors, to pass a background check and drug test before commencing work. The results were forwarded to Cablevision, which would then issue a contractor ID badge to each individual. Subcontractors could hire helpers, but those individuals were also supposed to pass a background check and drug test and be issued an ID badge (*see Matter of Patino [Adderley Indus.—Commissioner of Labor]*, 253 AD2d 995, 995 [1998], *lv dismissed* 93 NY2d 920 [1999]). Cablevision would issue work orders each day. Each work order contained a technician ID number for the individual who Cablevision desired to complete that job; the process was the same for C & I's employees and subcontractors. Installers had to complete work orders for every job performed for a Cablevision customer and were supposed to call in each job as it was completed.

·The subcontractors could call C & I each morning to see if there was work for them that day, but they had to report to C & I's warehouse to pick up assignments. A subcontractor could refuse assignments, but repeated refusals could lead C & I to cease using that individual's services. Subcontractors were not required to show up every day or at any certain time, but C & I appreciated it if subcontractors called when they did not plan to work on a particular day and would reassign work orders if the assigned subcontractor did not appear by 9:00 A.M. C & I could not impose discipline on subcontractors like it would with employees, but C & I would withhold assignments on future days to punish subcontractors for performing poorly or for failing to show up—even though they were not required to work every day. Subcontractors could decide in what order to handle the assignments, but all customer appointments were required to be performed within certain time periods that were less than four-hour blocks. State and federal regulations generally require Cablevision to provide services within that time frame (*see* 47 CFR 76.309 [c]; 16 NYCRR 890.91). Although C & I's requirement that its installers comply with those government-imposed time deadlines is not alone sufficient to establish an employer-employee relationship (*see Matter of Wannen [Andrew Garrett Inc.—Commissioner of Labor]*, 57 AD3d 1029, 1030-1031 [2008]), it can still be considered as part of the overall determination of control exercised over the installers (*see Matter of Collins [County of Steuben—Hartnett]*, 165 AD2d 940, 941 [1990]).

Employees and subcontractors were required to wear C & I uniforms. They all supplied their own trucks, which had to be

white, and were given magnetic Cablevision logos to be placed on the vehicles during work hours (*see Matter of Patino [Adderley Indus.—Commissioner of Labor]*, 253 AD2d at 995). C & I gave all installers certain equipment, such as cable boxes, modems and cable wires, which was supplied by Cablevision. Customer complaints and billing were handled by C & I (*see Matter of De Paiva [Olympic Limousine—Commissioner of Labor]*, 270 AD2d 534, 534 [2000]). Subcontractors could negotiate the rate they were paid for each type of installation, but C & I supplied them with a basic payment rate and many subcontractors, including claimant, simply accepted the given rates. While subcontractors were supposed to supply their own insurance, C & I would cover a subcontractor on its policy if it discovered that the individual lacked insurance. All of the foregoing circumstances support the determination that the cable installers were employees.

Although claimant did not testify and all of the witnesses were officers or employees of C & I who asserted that the subcontractors were not employees, the Board was free to consider the information the witnesses provided without accepting their conclusions (*compare Matter of Patino [Adderley Indus.—Commissioner of Labor]*, 253 AD2d at 995-996, *with Matter of Vargas [Metropolitan Cable Communications, Inc.—Commissioner of Labor]*, 18 AD3d 994, 996 [2005]; *see Matter of Pace-O-Matic, Inc. v New York State Liq. Auth.*, 72 AD3d 1144, 1147 [2010]). Considering the entirety of the circumstances, and despite some evidence to the contrary, substantial evidence supports the Board's determination that an employer-employee relationship existed between C & I and its putative subcontractors (*see Matter of Patino [Adderley Indus.—Commissioner of Labor]*, 253 AD2d at 995-996).

Cardona, P.J., Spain, Stein and Egan Jr., JJ., concur. Ordered that the decisions are affirmed, without costs.