[964 NYS2d 714]

In the Matter of NORSE ENERGY CORP. USA, Appellant-Respondent, v TOWN OF DRYDEN et al., Respondents. DRYDEN RESOURCES AWARENESS COALITION, Proposed Intervenor-Respondent-Appellant.

Third Department, May 2, 2013

**APPEARANCES OF COUNSEL**

*The West Firm, PLLC*, Albany (*Thomas S. West* of counsel), for appellant-respondent.

*Knauf Shaw, LLP*, Rochester (*Alan J. Knauf* of counsel), for proposed intervenor-respondent-appellant.

*Deborah Goldberg, Earthjustice*, New York City, for Town of Dryden and another, respondents.

*Cynthia Feathers*, Glens Falls, for New York Farm Bureau, amicus curiae.

*Sidley Austin, LLP*, Washington, D.C. (*Joseph R. Guerra* of counsel), for American Petroleum Institute and others, amici curiae.

*Levene, Gouldin & Thompson, LLP*, Binghamton (*Scott R. Kurkoski* of counsel), for Business Council of New York State, Inc. and others, amici curiae.

*Whiteman, Osterman & Hanna, LLP*, Albany (*John J. Henry* of counsel), for Town of Ulysses and others, amici curiae.

*Jordan A. Lesser, New York State Assembly*, Albany, for Member of the Assembly Barbara Lifton, amicus curiae.

*Susan J. Kraham, Morningside Heights Legal Services, Inc.*, New York City, for Vicki Been and others, amici curiae.

*Nancy S. Marks, Natural Resources Defense Council*, New York City (*Katherine Sinding* of counsel), for Catskill Mountainkeeper and others, amici curiae.

*Tooher & Barone LLP*, Albany (*John L. Barone* of counsel), for A&E Management & Contracting, Inc., and others, amici curiae.

**OPINION OF THE COURT**

PETERS, P.J.

In August 2011, the zoning ordinance of respondent Town of Dryden (hereinafter the Town) was amended to ban all activi-

ties related to the exploration for, and the production or storage of, natural gas and petroleum. The amendment occurred in the midst of growing local concern over the proposed use of high volume hydraulic fracturing, commonly known as "hydrofracking," to recover natural gas from underground shale deposits.[1] Petitioner's predecessor in interest, Anschutz Exploration Corporation, a driller and developer of oil and natural gas wells that owned leases covering approximately 22,200 acres of land in the Town of Dryden, Tompkins County, thereafter commenced this combined proceeding pursuant to CPLR article 78 and action for declaratory judgment seeking invalidation of the zoning amendment on the ground that it was preempted by the Oil, Gas and Solution Mining Law (see generally ECL 23-0301 et seq. [hereinafter OGSML]).[2] Following joinder of issue, respondents moved for summary judgment declaring that the OGSML does not preempt the zoning ordinance amendment. Anschutz opposed the motion and urged Supreme Court to grant summary judgment in its favor.

Subsequently, Dryden Resources Awareness Coalition (hereinafter DRAC), an association of approximately 71 residents and landowners in the Town formed "to educate and protect the Dryden community from the impacts and hazards associated with hydraulic fracturing," moved to intervene and defend the zoning ordinance. Both respondents and petitioner opposed DRAC's motion. Supreme Court denied DRAC's motion and granted summary judgment to respondents, concluding that, with the exception of a provision invalidating permits issued by other local or state agencies, the amendment to the zoning ordinance was not preempted by the OGSML.[3] Petitioner and DRAC now appeal.[4]

---

1. Hydrofracking involves a process by which a mixture of fresh water and chemical additives are pumped under high pressure into shale formations beneath the ground. This process is typically accomplished by drilling multiple horizontal wells out from a vertical well. Once in the shale, the mixture disturbs, among other things, deposits of methane gas and is then returned to the surface, where it is stored or transported in order to retrieve the methane. Currently, there is significant concern regarding the environmental effects of hydrofracking, particularly the risk of groundwater contamination.

2. During the pendency of this appeal, Anschutz assigned its interest in certain oil and gas leases in the Town to petitioner, who was thereafter substituted in the proceeding by order of this Court (see CPLR 1018, 1021).

3. Respondents do not challenge Supreme Court's determination with regard to the permit provision.

4. Several interested groups were granted permission to file amici curiae briefs on this appeal and/or the appeal in Cooperstown Holstein Corp. v Town

# I. Intervention

██ As a preliminary matter, we address Supreme Court's denial of DRAC's motion to intervene. As the court dismissed, as improper, that part of the petition/complaint seeking relief under CPLR article 78, DRAC was required to establish entitle-

---

*of Middlefield* (106 AD3d 1170 [2013] [decided herewith]), which address the same question of preemption at issue here. These groups include (1) New York Farm Bureau (*see* 2012 NY Slip Op 89400[U] [2012]; 2012 NY Slip Op 89414[U] [2012]); (2) American Petroleum Institute, Chamber of Commerce of the United States of America and Independent Oil and Gas Association of New York (*see* 2012 NY Slip Op 89955[U] [2012]; 2012 NY Slip Op 89959[U] [2012]); (3) Business Council of New York State, Inc., Clean Growth Now, National Association of Royalty Owners, NARO-NY and Joint Landowners Coalition of New York, Inc. (*see* 2012 NY Slip Op 90485[U] [2012]; 2012 NY Slip Op 90486[U] [2012]); (4) Town of Ulysses, City of Ithaca, City of Oneonta, Town of Alfred, Town of Ancram, Town of Camillus, Town of Carlisle, Town of Caroline, Town of Chatham, Town of Claverack, Town of Copake, Town of Danby, Town of Dewitt, Town of Elbridge, Town of Enfield, Town of Geneva, Town of Gorham, Town of Highland, Town of Ithaca, Town of Jerusalem, Town of Kirkland, Town of Lansing, Town of Livingston, Town of Lumberland, Town of Marcellus, Town of Meredith, Town of Middlesex, Town of Middletown, Town of Milo, Town of New Hartford, Town of Mendon, Town of Otisco, Town of Otsego, Town of Owasco, Town of Potsdam, Town of Rush, Town of Sennett, Town of Skaneateles, Town of Springfield, Town of Summit, Town of Tusten, Town of Wales, Town of Westmoreland, Town of Woodstock, Village of Cayuga Heights, Village of Dundee, Village of Freeville, Village of Honeoye Falls, Village of Prospect, Village of Saugerties, Village of Sharon Springs, Village of Trumansburg, Association of Towns of the State of New York, New York Conference of Mayors and New York Planning Federation (*see* 2012 NY Slip Op 91270[U] [2012]; 2012 NY Slip Op 91275[U] [2012]); (5) Member of Assembly Barbara Lifton, 125th Assembly District (*see* 2012 NY Slip Op 95156[U] [2012]); (6) Professors Vicki Been, Richard Briffault, Nestor Davidson, Clayton Gillette, Roderick M. Hills Jr., John Nolon, Ashira Ostrow, Patricia Salkin, Christopher Serkin and Stewart Sterk (*see* 2012 NY Slip Op 95153[U] [2012]; 2012 NY Slip Op 95157[U] [2012]); (7) Catskill Mountainkeeper, Delaware Riverkeeper Network, Gas Drilling Awareness for Cortland County, Natural Resources Defense Council, Inc., Otsego 2000, Inc., Preservation League of New York State, Riverkeeper Inc., Theodore Gordon Flyfishers, Inc. and Vestal Residents for Safe Energy (*see* 2012 NY Slip Op 95155[U] [2012]; 2012 NY Slip Op 95158[U] [2012]); and (8) A&E Management & Contracting, Inc., Arm-of-the-Sea Production, Inc., Beaverkill Angler, LLC, Bravo Original Ceramic Designs, Brewery Ommegang, Catherine Cottages, Cleinman Performance Partners, Inc., Cooperstown Cheese Company, Dutch Ale House, Inc., Dutch Girl Cheese, Fairytale Farm, Gold Petals/Homescapes Inc., Hudson Valley Dessert Company, Hunt Country Vineyards, LLC, Lucky Chocolates LLC, Lydia Afia, Miriam's Well, Inc., Northeast Organic Farming Association of New York, Inc., Our Bookshop, Promo-to-go LLC, Park Slope Food Coop, Inc., Partition Street Wine Shop, Savor Gracie, Inc., Silver Thread Vineyard, LLC, Slope Farms, Dirt Diva and Inn at Cooperstown (*see* 2012 NY Slip Op 95154[U] [2012]; 2012 NY Slip Op 95159[U] [2012]).

ment to intervention pursuant to CPLR article 10. "While the only requirement for obtaining an order permitting intervention via [CPLR 1013] is the existence of a common question of law or fact, the resolution of such a motion is nevertheless a matter of discretion" (*Matter of Pier v Board of Assessment Review of Town of Niskayuna*, 209 AD2d 788, 789 [1994] [citation omitted]; *see Kripke v Benedictine Hosp.*, 255 AD2d 725, 728 [1998]).

Here, although members of DRAC submitted affidavits identifying effects that hydrofracking may have on their daily lives, these claimed impacts were largely speculative and failed to demonstrate a substantial interest in the outcome of the action different from other residents of the Town. Further, as noted by Supreme Court, the Town is the preeminent party in defending the validity of the zoning ordinance amendment which it enacted (*cf. Matter of Rent Stabilization Assn. of N.Y. City v New York State Div. of Hous. & Community Renewal*, 252 AD2d 111, 115 [1998]). Under the circumstances, we find no abuse of discretion and, like Supreme Court, grant DRAC amicus curiae status and consider its arguments in that context (*see Matter of Pace-O-Matic, Inc. v New York State Liq. Auth.*, 72 AD3d 1144, 1145 [2010]; *Quality Aggregates v Century Concrete Corp.*, 213 AD2d 919, 920-921 [1995]).

## II. Preemption

We now turn to the question of whether OGSML preempts the amendment to the Town's zoning ordinance banning all activities related to the exploration for, and the production or storage of, natural gas and petroleum. The NY Constitution grants "every local government [the] power to adopt and amend local laws not inconsistent with the provisions of [the] constitution or any general law relating to its property, affairs or government" (NY Const, art IX, § 2 [c]; *see Anonymous v City of Rochester*, 13 NY3d 35, 51 [2009] [Graffeo, J., concurring]; *People v De Jesus*, 54 NY2d 465, 468 [1981]). To implement this express grant of authority to local governments, the Legislature enacted a series of statutes establishing a wide range of local powers (*see generally Kamhi v Town of Yorktown*, 74 NY2d 423, 428-429 [1989]). Among the powers delegated to local governments is the authority to regulate the use of land through the enactment of zoning laws (*see* Municipal Home Rule Law § 10 [1] [ii] [a] [11]; Statute of Local Government § 10 [6], [7]; Town Law § 261; *Matter of Kamhi v Planning Bd. of Town of Yorktown*, 59 NY2d

385, 389 [1983]; *Riegert Apts. Corp. v Planning Bd. of Town of Clarkstown*, 57 NY2d 206, 209 [1982]). As the Court of Appeals has emphasized, "[o]ne of the most significant functions of a local government is to foster productive land use within its borders by enacting zoning ordinances" (*DJL Rest. Corp. v City of New York*, 96 NY2d 91, 96 [2001]; *see Little Joseph Realty v Town of Babylon*, 41 NY2d 738, 745 [1977]; *Udell v Haas*, 21 NY2d 463, 469 [1968]; *see also Trustees of Union Coll. in Town of Schenectady in State of N.Y. v Members of Schenectady City Council*, 91 NY2d 161, 165 [1997]).

The doctrine of preemption, however, "represents a fundamental limitation on home rule powers" (*Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d 372, 377 [1989]; *accord Matter of Cohen v Board of Appeals of Vil. of Saddle Rock*, 100 NY2d 395, 400 [2003]). The Legislature may expressly state its intent to preempt, or it may do so by implication (*see Matter of Cohen v Board of Appeals of Vil. of Saddle Rock*, 100 NY2d at 400; *DJL Rest. Corp. v City of New York*, 96 NY2d at 95). Where, as here, a statute contains an express preemption clause, its effect "turns on the proper construction of [the] statutory provision" (*Matter of Frew Run Gravel Prods. v Town of Carroll*, 71 NY2d 126, 131 [1987]). The primary consideration in matters of statutory interpretation "is to 'ascertain and give effect to the intention of the Legislature' " (*Riley v County of Broome*, 95 NY2d 455, 463 [2000], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a]; *see Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270, 286 [2009]). Such efforts begin with an examination of the statutory text itself (*see Yatauro v Mangano*, 17 NY3d 420, 426 [2011]; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]).

### A. Express Preemption

■ The supersession clause in the OGSML provides that "[t]he provisions of [ECL article 23] shall supersede all local laws or ordinances relating to the regulation of the oil, gas and solution mining industries; but shall not supersede local government jurisdiction over local roads or the rights of local governments under the [RPTL]" (ECL 23-0303 [2]). Thus, the plain language of this provision prohibits municipalities from enacting laws or ordinances *relating to the regulation* of the oil, gas and solution mining industries" (ECL 23-0303 [2] [emphasis added]). As the OGSML does not define the word "regulation," we must give this word its ordinary and natural meaning (*see*

*People v Quinto*, 18 NY3d 409, 417 [2012]; *Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd.*, 51 NY2d 506, 511 [1980]). Regulation is commonly defined as "an authoritative rule dealing with details or procedure" (Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/regulation). The zoning ordinance at issue, however, does not seek to regulate the details or procedure of the oil, gas and solution mining industries. Rather, it simply establishes permissible and prohibited uses of land within the Town for the purpose of regulating land generally (*see Matter of Frew Run Gravel Prods. v Town of Carroll*, 71 NY2d at 131 [stating that "(t)he purpose of a municipal zoning ordinance in dividing a governmental area into districts and establishing uses to be permitted within the districts is to regulate land use generally"]). While the Town's exercise of its right to regulate land use through zoning will inevitably have an incidental effect upon the oil, gas and solution mining industries, we conclude that zoning ordinances are not the type of regulatory provision that the Legislature intended to be preempted by the OGSML (*see DJL Rest. Corp. v City of New York*, 96 NY2d at 97; *Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668, 681-682 [1996]; *Matter of Hunt Bros. v Glennon*, 81 NY2d 906, 908-910 [1993]; *Matter of Frew Run Gravel Prods. v Town of Carroll*, 71 NY2d at 131).

The legislative history of ECL 23-0303 (2), specifically, and the OGSML, generally, support this determination. The statutory scheme governing oil and gas was added to the former Conservation Law in 1963 (*see* L 1963, ch 959), with the Conservation Department[5] being charged with its administration (*see* former Conservation Law § 72; *see also* Mem of Conservation Dept, Bill Jacket, L 1963, ch 959). The statute's official policy was:

> "to foster, encourage and promote the development, production and utilization of natural resources of oil and gas . . . in such a manner as will prevent waste; to authorize and to provide for the operation and development of oil and gas properties in such a manner that a greater ultimate recovery of oil and gas may be had, and that the correlative rights of all owners and the rights of all persons including land-

---

5. The current Department of Environmental Conservation was established in 1970 (*see* L 1970, ch 140).

owners and the general public may be fully protected" (former Conservation Law § 70; L 1963, ch 959).

"Waste" was defined in technical terms as, among other things, "the inefficient, excessive or improper use of, or the unnecessary dissipation of reservoir energy," or "the locating, spacing, drilling, equipping, operating, or producing of any oil or gas well or wells in a manner which causes or tends to cause reduction in the quantity of oil or gas ultimately recoverable from a pool under prudent and proper operations" (former Conservation Law § 71 [1]; L 1963, ch 959). Notably, the provisions of the enactment focus on matters that are regulatory in nature, such as well spacing, delineation of pools and procedures for obtaining permits. They do not address any traditional land use issues that would otherwise be the subject of a local municipality's zoning authority (*see* L 1963, ch 959).

Amendments to the ECL in 1978 modified the policy of the OGSML, replacing the phrase *"to foster, encourage and promote* the development, production and utilization of natural resources of oil and gas . . . in such a manner as will prevent waste" (L 1963, ch 959, § 1 [emphasis added]) with *"to regulate* the development, production and utilization of natural resources of oil and gas . . . in such a manner as will prevent waste" (L 1978, ch 396, § 1 [emphasis added]). Notably, the 1978 legislation simultaneously amended the state's energy policy to, among other things, *"foster, encourage and promote* the prudent development and wise use of all indigenous state energy resources including, but not limited to, on-shore oil and natural gas, off-shore oil and natural gas [and] natural gas from Devonian shale formations" (L 1978, ch 396, § 2 [emphasis added]; *see* Energy Law § 3-101 [5]). By these amendments, the Legislature clearly acknowledged that promotion and regulation were considered separate and distinct activities, as they transferred the promotion of energy to the Energy Office while continuing regulation of the oil, gas and solution mining industries within the Department of Environmental Conservation (hereinafter DEC).

In 1981, the preemption clause at issue here was enacted as part of an act that amended the Finance Law, the ECL, the RPTL, the Agriculture and Markets Law and the Tax Law (*see*

L 1981, ch 846).[6] Significantly, the purpose of the 1981 amendments to the ECL was "to promot[e] the development of oil and gas resources in New York *and* regulat[e] the activity of the industry" (L 1981, ch 846 [emphasis added]; *see* Sponsor's Mem, Bill Jacket, L 1981, ch 846, 1981 NY Legis Ann at 448). This purpose was to be achieved by, among other things, "establishing new fees to fund additional regulatory personnel for the industry and to provide a fund to pay for past and future problems which resulted [from] the industry's activities [and] establishing a uniform method of real property taxation for oil and natural gas lands" (Sponsor's Mem, Bill Jacket, L 1981, ch 846, 1981 NY Legis Ann at 448). The sponsor's memorandum supporting the bill stated that the oil, gas and mining industry "will benefit from the expeditious handling of permits and improved regulation," observing that "[t]he recent growth of drilling in the State has exceeded the capacity of DEC to effectively regulate and service the industry" (Sponsor's Mem, Bill Jacket, L 1981, ch 846, 1981 NY Legis Ann at 448). Explaining that DEC was unable to fulfill its "regulatory responsibilities" with its existing funding and powers (Governor's Approval Mem, Bill Jacket, L 1981, ch 846, 1981 NY Legis Ann at 449), the Governor's memorandum approving the 1981 bill confirms that the amendments would provide DEC with funding for its "updated regulatory program" as well as "additional enforcement powers necessary to enable it to provide for the efficient, equitable and environmentally safe development of the State's oil and gas resources" (Governor's Approval Mem, Bill Jacket, L 1981, ch 846, 1981 NY Legis Ann at 449).

From the legislative history of the OGSML and, in particular, the 1981 amendments, it is evident that the Legislature's intention was to ensure uniform statewide standards and procedures with respect to the technical operational activities of the oil, gas and mining industries in an effort to increase efficiency while minimizing waste, and that the supersession provision was enacted to eliminate inconsistent local regulation that impeded that goal. We find nothing in the language, statutory scheme or legislative history of the statute indicating an intention to usurp the authority traditionally delegated to municipalities to establish permissible and prohibited uses of land within their jurisdictions. In the absence of a clear expression of legislative intent to preempt local control over land use, we decline to give the stat-

6. Prior to that time, ECL 23-0303 consisted of only the language now contained in ECL 23-0303 (1) (*see* L 1981, ch 846, § 4; L 1972, ch 664, § 2).

ute such a construction (*see Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d at 682; *Matter of Frew Run Gravel Prods. v Town of Carroll*, 71 NY2d at 134).[7] By construing ECL 23-0303 (2) as preempting only local legislation regulating the actual operation, process and details of the oil, gas and solution mining industries, "the statutes may be harmonized, thus avoiding any abridgement of [a] town's powers to regulate land use through zoning powers expressly delegated in the Statute of Local Governments . . . and [the] Town Law" (*Matter of Frew Run Gravel Prods. v Town of Carroll*, 71 NY2d at 134).

Decisional law interpreting a similar supersession provision contained in the New York State Mined Land Reclamation Law (*see* ECL 23-2701 *et seq.* [hereinafter MLRL]) further supports our determination that the Legislature did not intend for the OGSML to preempt the zoning authority of municipalities.[8] In *Matter of Frew Run Gravel Prods. v Town of Carroll* (71 NY2d at 133-134), the Court of Appeals held that the MLRL did not preempt a town's zoning law which established a zoning district where sand and gravel operations were not a permitted use. At that time, the MLRL contained a supersession provision providing that:

> "this title shall supersede all other state and local laws relating to the extractive mining industry; provided, however, that nothing in this title shall be construed to prevent any local government from enacting local zoning ordinances or other local laws which impose stricter mined land reclamation standards or requirements than those found herein" (ECL 23-2703 [former (2)]).

Construing the language "relating to the extractive mining industry" according to its plain meaning, the Court found that the zoning law was not preempted by the MLRL's supersession provision as it was related to "an entirely different subject matter and purpose: i.e., regulating the location, construction and

---

7. Indeed, in other contexts, the Legislature has clearly evinced its intent to preempt local zoning authority within the express text of the statute. For example, in ECL 27-1107—the same statute at issue here—the Legislature expressly prohibited local municipalities from requiring "any approval, consent, permit, certificate or other condition *including conformity with local zoning or land use laws and ordinances*," concerning the operation of hazardous waste facilities (emphasis added).

8. Despite petitioner's assertions to the contrary, we fail to find any meaningful distinction between the language of the supersession provision of the OGSML and that of the MLRL.

use of buildings, structures, and the use of land in the Town" (*Matter of Frew Run Gravel Prods. v Town of Carroll*, 71 NY2d at 131 [internal quotation marks and citation omitted]). In limiting supersession to those laws "relating to the extractive mining industry," the Court concluded, the Legislature intended to preempt only "[l]ocal regulations dealing with *the actual operation and process of mining*" (*id.* at 133 [emphasis added]). The Court explained that local zoning ordinances affect the mining industry only in incidental ways and, notably, do not frustrate the MLRL's stated purpose "to foster a healthy, growing mining industry" (*id.* at 132 [internal quotation marks and citation omitted]). Here, too, the amendment to the Town's zoning ordinance—enacted pursuant to its constitutional and statutory authority to impose land use regulations—while incidentally impacting the oil, gas, and solution mining industries, does not conflict with the state's interest in establishing uniform procedures for the operational activities of these industries.[9]

Thus, based upon the plain meaning of the language contained in the supersession clause, the relevant legislative history and the purpose and policy of OGSML as a whole, and mindful of the interpretation accorded to MLRL's similar supersession provision, we find that ECL 23-0303 (2) does not serve to preempt a municipality's authority to enact a local zoning ordinance prohibiting oil, gas and solution mining or drilling within its borders.

## B. Implied Preemption

 Petitioner further argues that, even if the amendment to the Town's zoning ordinance is not expressly preempted by the OGSML, it is nevertheless invalid under principles of implied preemption. While the existence of an express preemption clause

---

**9.** The Court of Appeals confirmed the distinction between zoning ordinances and local ordinances that dictate the manner and method of mining operations nearly a decade later in *Matter of Gernatt Asphalt Prods. v Town of Sardinia* (87 NY2d 668, 681-682 [1996]). In concluding that the MLRL did not preempt a town's authority to determine, by way of a zoning ordinance, that mining would no longer be a permitted use of land within the town, the Court expressly rejected the mining company's argument—similar to that asserted by petitioner here—that because the MLRL's policy is to "foster[ ] and promot[e] the mining industry in this State" (*id.* at 681), a municipality is obligated to permit the extraction of those natural resources somewhere within its borders (*id.* at 682-683). In so concluding, the Court explained that

> "[a] municipality is not obliged to permit the exploitation of any and all natural resources within the town as a permitted use if limiting that use is a reasonable exercise of its police powers to prevent damage to the rights of others and to promote the interests of the community as a whole" (*id.* at 684).

in a statute supports a reasonable inference that the Legislature did not intend to preempt other matters, it does not, as respondents suggest, entirely foreclose any possibility of implied preemption (*see Freightliner Corp. v Myrick*, 514 US 280, 287-288 [1995]; *Drattel v Toyota Motor Corp.*, 92 NY2d 35, 48-49 [1998]; *Matter of Office of Attorney Gen. of State of N.Y.*, 269 AD2d 1, 7 [2000]). Petitioner's implied preemption argument must fail, however, because the zoning amendment neither conflicts with the language nor the policy of the OGSML.

Under the doctrine of conflict preemption, a "local government . . . may not exercise its police power by adopting a local law inconsistent with constitutional or general law" (*New York State Club Assn. v City of New York*, 69 NY2d 211, 217 [1987], *affd* 487 US 1 [1988]; *see DJL Rest. Corp. v City of New York*, 96 NY2d at 95; *Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d 91, 96 [1987]). Citing to specific provisions of the OGSML that address well spacing, petitioner claims that the OGSML directs "where" drilling is to occur in order to ensure that wells are drilled and spaced in a manner that maximizes resource recovery and minimizes waste, and that this directive cannot be complied with if municipalities are permitted to enact zoning ordinances banning drilling within their jurisdictions. The provisions that petitioner points to, however, relate to the details and procedures of well spacing by drilling operators (*see e.g.* ECL 23-0101 [20] [c]; 23-0503 [2]) and do not address traditional land use considerations, such as proximity to nonindustrial districts, compatibility with neighboring land uses, and noise and air pollution. As we noted, the well-spacing provisions of the OGSML concern technical, operational aspects of drilling and are separate and distinct from a municipality's zoning authority, such that the two do not conflict, but rather, may harmoniously coexist; the zoning law will dictate in which, if any, districts drilling may occur, while the OGSML instructs operators as to the proper spacing of the units within those districts in order to prevent waste.

Nor are we persuaded that municipal zoning ordinances that effect a ban on drilling conflict with the policies of the OGSML. There is nothing in the statute or its legislative history suggesting, as petitioner does, that it is the policy of this state to "maximize recovery" of oil and gas resources at the expense of municipal land use decision making. While the statute seeks to avoid waste—that is, "the inefficient, excessive or improper use of, or the unnecessary dissipation of reservoir energy" and the

"locating, spacing, drilling, equipping, operating, or producing of any oil or gas well or wells in a manner which causes or tends to cause reduction in the quantity of oil or gas ultimately recoverable from a pool under prudent and proper operations" (ECL 23-0101 [20] [b], [c]; former Conservation Law § 71 [1]; L 1963, ch 959)—this does not equate to an intention to require oil and gas drilling operations to occur in each and every location where such resource is present, regardless of the land uses existing in that locale. Indeed, the policy of the OGSML explicitly seeks to protect the rights of "all persons including landowners and the general public"—not just the owners of oil and gas properties, such as petitioner (former Conservation Law § 70; L 1963, ch 959), a goal which is realized when individual municipalities can determine whether drilling activities are appropriate for their respective communities. Accordingly, respondents' decision to amend the Town's zoning ordinance to prohibit the activity of hydrofracking does not conflict with the Legislature's intent to ensure that, where oil or gas drilling occurs, the operations are as efficient and effective as possible.

Thus, we hold that the OGSML does not preempt, either expressly or impliedly, a municipality's power to enact a local zoning ordinance banning all activities related to the exploration for, and the production or storage of, natural gas and petroleum within its borders.

STEIN, SPAIN and GARRY, JJ., concur.

Ordered that the judgment is affirmed, without costs.